[Civ. No. 13168. Second Dist., Div. Three. July 21, 1942.]

JOE LOWE CORPORATION (a Corporation), Respondent, v. MARLIN B. RASMUSSON, Appellant.

Johnson & Harmon, Wm. H. Henderson and Cannon & Callister for Appellant.

Wright & Millikan for Respondent.

SHINN, J.—There is before us an appeal by defendant from an order denying his motion for change of place of trial. The action, which was brought in Los Angeles County, is for the recovery of damages for breach of contract. Defendant's motion as originally presented was for a transfer of the action to Sacramento County upon the ground that defendant resided in that county at the time of the commencement of the action.

The law which controls in a case of this sort is found in section 395 of the Code of Civil Procedure, under the provisions of which the county in which the defendant resided

at the time of the commencement of the action was the proper county for the trial unless defendant contracted to perform an obligation in a particular county, in which case either the county where performance was to be had or the county of defendant's residence was the proper one for the trial of an action founded on such obligation (the county where the obligation is incurred is deemed the county in which it is to be performed unless there is a special contract in writing to the contrary). It was necessary for the court to answer the following questions: (1) did defendant reside in the county of Sacramento on March 7, 1941, the day the action was commenced? (2) where was the contract executed? and (3) was there a special contract in writing for performance other than in the county where the contract was executed? In support of the correctness of the court's ruling we have to assume that all of the material facts which were in issue were decided by the court in favor of plaintiff-respondent, namely, that defendant did not reside in Sacramento County at the time of the commencement of the action or that the obligation was incurred in Los Angeles County. The possible situation that the obligation may have been incurred in one county with a special contract in writing to perform it in another does not enter into the case, that is to say, there is no contention and, as will be seen from the contract itself, there could be none that performance was to be had in Los Angeles County.

According the greatest weight to the evidence which tends to support the implied findings in favor of respondent we think it showed without substantial conflict that the obligation was incurred in the city and county of San Francisco and that defendant resided at the time of the commencement of the action in the county of Sacramento. In either case Los Angeles County was not the proper county for the trial of the action.

The contract was dated November 15, 1939, and was executed by the contracting parties in San Francisco. In its material provisions it expressed an agreement between the parties as follows: (1) defendant sold to plaintiff a going business in the manufacture and sale of frozen confections, to be paid for as follows: "The purchaser agrees to pay therefor the sum of $75,000, upon which the sum of $1,000 paid on signing this agreement shall be credited and the balance in cash or certified check payable on conveyance of title or

when the seller may elect''; (2) plaintiff agreed to employ defendant for two years at a stipulated compensation plus actual and necessary expenses, and defendant agreed that he would to the best of his ability devote his whole time to increase and develop the business of the purchaser; (3) defendant agreed to reduce to writing certain new ideas about the business and to place the same in escrow with a bank at Sacramento, to be delivered to plaintiff within six months after the date of the agreement, defendant to receive 10 per cent of the net revenue derived from the use of said new ideas for a given number of years; (4) transfer of title and delivery of all papers should take place on the 22d day of November, 1939, at Sacramento, California, or at whatever other time or place was mutually agreed upon by the parties. On November 22, 1939, in the county of Los Angeles, a further agreement was entered into between the parties, which provided that instead of $75,000 cash plaintiff would pay $25,000 cash November 22, 1939, receipt of which was acknowledged by the agreement, that certain items which were to be prorated under the agreement, such as rentals, salaries, light, etc., should be adjusted within fifteen days after November 22, 1939; that $25,000 would be paid on or before May 15, 1940, and the entire balance, as adjusted, on or before May 15, 1941. Plaintiff agreed to deposit with a Los Angeles bank bonds satisfactory to the defendant sufficient to secure the deferred payments, the interest on the bonds to be paid to plaintiff. The adjustment was made, the bonds were deposited and transfer of title took place as agreed.

The complaint charged that the agreement had been breached by the defendant in certain respects, namely, that defendant for approximately a year prior to the commencement of the action failed and neglected to devote his time and ability to increase and develop the business and neglected said business, to plaintiff's damage, in the sum of $36,000; that defendant devoted a substantial part of his time and energies and resources to the development of a competing business, wilfully hindered plaintiff's business, and assisted a competitor by various alleged means and devices, to plaintiff's damage in the sum of $25,000, and that defendant failed, refused and neglected to reduce to writing his new ideas concerning said business and to deposit such writing in escrow for plaintiff's benefit, as provided by the agree-

ment, to plaintiff's damage in the sum of $30,000. It will be noted that there was no breach of the agreement to transfer the business. It will also be noted that the obligations upon which the present action is founded were incurred by the terms of and at the time of the signing of the agreement which was executed in San Francisco. The agreement of November 22, 1939, which we will call the supplemental agreement and which was signed in Los Angeles, imposed upon the defendant no additional obligation except to forego the right to receive the total purchase price in cash and to accept payment upon other terms.

Counsel are agreed that the trial court regarded the act of signing the supplemental agreement as the final act of the parties in the execution of the contract and held accordingly that the obligation upon which the action is founded was incurred in the county of Los Angeles, was to be performed there, since there was no written stipulation to perform it elsewhere, and that therefore the action was triable in Los Angeles County even though the defendant resided in another county at the time of the commencement of the action. We are not able to give the contract this construction and effect. The action is not founded upon any obligation of the defendant incurred by the supplemental agreement, if indeed, it could be said that he assumed an obligation at all, in a sense to be recognized here, in agreeing to extend the time for the payment of two-thirds of the purchase price. The supplemental agreement is so lacking in materiality to the issues involved that the case could be tried and determined without proof of the supplemental agreement itself. Respondent contends that the original agreement was incomplete, that the supplemental agreement "was an integral and necessary part of the contract between the parties and was the final act giving binding force and effect to the agreement of the parties." But if the supplemental agreement had never been made, the original agreement would have been complete and the purchase price, less $1,000, would have been payable in full in cash or by certified check on conveyance of title. The option was with defendant whether he would receive payment at some other time; his failure to stipulate a different time of payment would have detracted nothing from the completeness of the agreement. The action therefore could not properly have been held for trial in Los Angeles County upon the theory that the obligation was in-

curred in that county or upon the ground that it was to be performed there.

■ We now take up the evidence bearing upon the implied finding that defendant did not reside in Sacramento County. It was recited in the agreement of November 15, 1939, that defendant resided in Sacramento at that time and it is not disputed that he did reside there. Certain other facts were established without conflict by affidavits filed in support of and in opposition to the motion, namely, that defendant had resided in Sacramento from 1932 until after the date of the agreement; that he had three ice cream plants which he sold to plaintiff, one in Sacramento, one in Fresno and the third in Oakland, which he operated through a corporation, Frigid Process Company; that soon after plaintiff purchased these businesses a new corporation was formed under the name Frigid Process Corporation, which acquired the three mentioned plants and purchased one other in South Pasadena; that defendant became president and general manager of this new corporation; that at plaintiff's request he came to Los Angeles in December, 1939, managed the South Pasadena plant and the other plants as well; that he then took up his residence in Los Angeles and maintained an apartment there until December, 1940; that from April to July, 1940, he had headquarters in the South Pasadena plant but spent most of his time in Oakland, Sacramento, and other Northern California districts; while away from Los Angeles he was paid his traveling expenses by plaintiff; in July, 1940, the general home office of the Frigid Process Corporation was established in Los Angeles; from July, 1940, to December, 1940, defendant had no business headquarters; in December, 1940, at plaintiff's request, he established headquarters at a hotel in Oakland, where he lived until February 15, 1941, during which time he was paid his traveling expenses away from Oakland; that on the latter date he moved to Sacramento and continued to live there at the home of his brother-in-law, one Bertagna, and also rented an apartment in Sacramento, where he transacted his business, although he had callers, received his mail and telephone calls at the home of his brother-in-law; he did not charge to plaintiff and did not receive his expenses while in Sacramento subsequent to February 15, 1941.

It was not shown that defendant maintained a residence in Los Angeles at any time after December, 1940, when he

moved to Oakland, nor whether he had any family other than his brother-in-law in Sacramento. It was not denied that from and after December, 1939, defendant spent the greater portion of his time away from Los Angeles on business of the company. No fact or circumstance was shown tending to prove that defendant expected to leave Sacramento after he moved there February 15, 1941, and to take up his residence elsewhere, or that he had any reason to do so. By affidavit he stated that it had always been his intention to return to Sacramento where he had always considered his home to be and to keep that as his permanent home. His other residences in Los Angeles and Oakland were taken up at the request of his company and for business reasons. It was not shown that he owned any real estate either in Los Angeles or Sacramento counties. In support of the motion the brother-in-law, Bertagna, made affidavit that he had rented his home which he owned in Sacramento to defendant about February 15, 1941, and by affidavit of a witness on behalf of plaintiff it was shown that Bertagna had stated over the telephone to the witness that he, Bertagna, was renting the house himself and that the defendant was living there with him as his guest. Except in this minor particular the evidence bearing upon the question of residence was without conflict.

We do not find in the record any evidence which would support a finding that defendant resided in Los Angeles County rather than in Sacramento County. If his residence was not in one county it was in the other and all of the evidence is to the effect that it was in the latter county. ▮ The matter of residence is essentially one of intention. ▮ Defendant had resided in Sacramento seven years and had been engaged in business in that county for seven years before selling out to plaintiff. He returned there after a temporary absence due to the demands of business and the requests of the plaintiff. Upon this showing and except for an attempted amendment of the motion to change place of trial, the action in our opinion should have been transferred to the county of Sacramento.

We feel that we should add that in discussing the matter of residence we have had in mind that there is nothing in the record to show that the trial judge either believed or found that defendant did not reside in Sacramento County. We have been obliged to presume that he did so find because

such a finding would have given support to the order. We doubt whether the order would have been the same had the decision depended solely upon the question of residence. In view of the admitted fact that the court construed the contract as one executed in Los Angeles County, the question of residence would have seemed immaterial as the action would then have been triable in Los Angeles County even though defendant lived in Sacramento County.

Another matter requires attention. Before a ruling was made on the motion defendant gave notice of an intended amendment so that his motion would request a transfer to the city and county of San Francisco or other proper county on the stated ground that the obligation sued on was incurred in San Francisco. Affidavits and counter affidavits were filed on the application for leave to amend. The motion for transfer to Sacramento County and the motion to amend came on for hearing at the same time and both were denied. As the right to amend is one which the court may withhold in its discretion we would be hesitant under ordinary circumstances to disturb such a ruling, but here there were unusual conditions. We believe the order must be reversed and that defendant's amendment should be allowed. There are several considerations leading to this conclusion. The most important one is that the case was improperly held in Los Angeles County for trial. We believe also that the court in declining to allow the amendment found that the execution of the supplemental agreement in Los Angeles County was decisive as to the proper county for the trial of the cause and that the city and county of San Francisco for that reason would not be the proper county for trial of the action. We believe defendant was shown to have the right to a transfer of the action either to Sacramento County or the city and county of San Francisco.

The order is reversed with directions that the action be transferred to the city and county of San Francisco unless defendant within a time designated by the court waives his right for transfer to the city and county of San Francisco, and if such waiver is made transfer shall be made to Sacramento County.

Schauer, P. J., and Wood (Parker), J., concurred.