HARDENBURGH ET AL., RESPONDENTS, *v.* HARDENBURGH, APPELLANT.

(No. 8457.)

(Submitted November 10, 1943. Decided February 16, 1944.)

[146 Pac. (2d) 151.]

470

*Mr. Ralph L. Arnold,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Sanders & Anderson,* for Respondents, submitted a brief; *Mr. Milton G. Anderson* argued the cause orally.

MR. JUSTICE ADAIR delivered the opinion of the court.

Appeal by defendant from an order denying his motion for change of place of trial. The action, which was brought in Richland county, is to recover for breach of a written contract for sale. Defendant's motion was for a transfer of the action to Missoula county upon the grounds: (1) That defendant resided in that county at the time of the commencement of the action and (2) that Missoula county is the county in which the contract was to be performed.

It appears from the complaint, the copy of the contract attached thereto and the affidavit of defendant filed in support of his motion: That plaintiffs and defendant operated a commercial outdoor advertising business in the city of Missoula and surrounding territory; that on June 23, 1932, plaintiffs entered into a contract with defendant to sell him their interest in such business; that on the same date the parties also entered into an escrow agreement and plaintiffs executed a bill of sale of their interest, which papers were then placed in escrow with the First National Bank of Missoula, Montana; that more than eight years

passed and on April 19, 1941, at Missoula, the parties entered into a new written contract (the one sued upon) wherein they "mutually agreed to replace said agreement of June 23, 1932 and the escrow instructions of the same date, by the terms and stipulations" contained in the new contract; that in the new contract the plaintiffs promised to deliver to defendant the bill of sale "now held in escrow in the First National Bank of Missoula, Montana, conveying to the party of the first part [defendant] all their right, title and interest in and to the commercial advertising business heretofore mentioned"; that plaintiffs promised in the contract to "instruct the First National Bank of the City of Missoula, Montana, to deliver to the party of the first part [defendant] the Bill of Sale heretofore described, which said Bank now holds in escrow, and also to deliver to the said party of the first part [defendant] the agreement and escrow instructions dated June 23, 1932;" that the defendant promised in the contract to pay to plaintiffs or their order commencing with the 10th day of May, 1941, $100 per month as long as they or either of them shall live; that in the new contract the parties agreed that such contract "shall be in lieu of and shall replace the agreement dated June 23, 1932, and the escrow instructions of the same date and said agreement and escrow instructions are hereby declared by the parties to be null and void and of no further force or effect;" that the defendant promised to pay a reasonable attorney's fee in case of suit against him on the contract; that in event of the death of defendant before either of plaintiffs the contract was to become null and void and not to be the basis of any claim against the defendant's estate; that at the time of entering into the new contract all the contracting parties were then residents of the city and county of Missoula; that on May 24, 1943, when suit was commenced, and on the following day, when summons was served upon him, the defendant then was a bona fide resident of Missoula county, that defendant was served with process in Missoula county and that he has resided therein for 25 years last past. Plaintiffs demand judgment in the amount of certain interest installments alleged to be delinquent together

with interest, attorneys' fees and costs. The complaint alleges that "at all times material to this cause of action" plaintiffs have been and now are both residing at Sidney, Richland county, Montana, without alleging when plaintiffs removed from Missoula county or for what period of time they claimed to have resided in Richland county. In his affidavit the defendant, among other things, deposes: "That said action is founded upon a written contract, a copy of which is attached to the complaint, which written contract was executed in and to be performed in Missoula County, Montana and that all the parties thereto were resident in Missoula County, Montana at the time of the execution of said written contract." The one and only statement in the above paragraph which plaintiffs controvert is that the contract was to be performed in Missoula county, it being their contention that it was to be performed in Richland county.

A question of venue is presented, namely: What is the proper county for the trial of this action? The answer to the above question must be found in the terms of the statutes of this state regulating venue in civil actions. The statutes which regulate the venue of such actions are sections 9093 to 9098, inclusive, Revised Codes.

The general rule governing venue in civil actions is that the ■ action shall be tried in the county in which the defendant resides at the commencement of the action. (67 C. J. title Venue, sec. 27, p. 24; sec. 30, pp. 27, 28.)

In olden times venue indicated the county from which the jury was to come. This is the basis for the general rule: "Anciently a jury of one county could not try any matter arising in another county. A foreign county was almost as formidable a thing as a foreign country." (27 R. C. L. sec. 2, p. 778.) In present day ■ legal phraseology "venue" means the proper county for the trial of a cause; that is, the county or counties fixed by statute for the trial. "Venue" is not "jurisdiction" for jurisdiction may not be conferred by consent or waiver while venue may be altered either by consent or by waiver. (*Stanton Trust & Savings Bank* v. *Johnson*, 104 Mont. 235, 65 Pac. (2d) 1188.)

474

The statutes regulating venue provide either (a) for the application of the rule or (b) for the application of an exception to the rule. The Fourth Territorial Legislative Assembly (1867) enacted a Civil Practice Act and in sections 18 and 19, pages 137, 138 thereof, the venue of certain enumerated actions was specifically provided and these constituted exceptions to the general rule. However, in section 20, page 138, of said Act the general rule was adopted and it was provided that in all other cases than those enumerated in sections 18 and 19, supra, the action *shall* be tried in the county in which the defendants, or any of them, may reside at the commencement of the action. At all times since 1867 such provision has been a part of the law of this state. Section 20, supra, of the Civil Practice Act of 1867 provided; ''In all other cases the action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action; cr, if none of the defendants reside in the Territory, or if residing in the Territory, the county in which they so reside be unknown to the plaintiff, the same may be tried in any county which the plaintiff may designate in his complaint; and if any defendant or defendants may be about to depart from the Territory, such action may be tried in any county where either of the parties may reside, or service be had; subject however to the power of the court to change the place of trial, as provided in this Act.''

In the enactment of the Codified Statutes of 1871, all of section 20, supra, was carried forward in the Codes and in addition thereto new matter was added by way of amendment, which new matter we are indicating in italics, said statute, as amended, reading: ''Sec. 25. In all other cases, the action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action, *or where the plaintiff resides, and the defendants or any of them may be found;* or, if none of the defendants reside in the territory, or, if residing in the territory, the county in which they so reside be unknown to the plaintiff, the same may be tried in any county which the plaintiff may designate in his complaint; and if any defendant or de-

fendants may be about to depart from the territory, such action may be tried in any county where either of the parties may reside, or service be had. *Actions upon contracts may be tried in the county in which the contract was to be performed; and actions for torts, in the county where the tort was committed;* subject, however, to the power of the court to change the place of trial as provided in this Act.''

Except for changing the word ''territory'' to the word ''state'' and changing the word ''act,'' being the last word in the statute, to the word ''Code,'' said section 25 of the Codified Statutes of 1871, page 31, has been re-enacted and carried through the various subsequent revisions of the Codes, and now appears as section 9096, Revised Codes of Montana of 1935.

As the instant action is not of any class enumerated in the exceptions provided in sections 9093, 9094 and 9095, Revised Codes of 1935, its venue must be determined under the provisions of section 9096, Revised Codes, which applies to ''all other cases.''

Section 9096, excepting only the last sentence thereof, was originally taken from the Code of Civil Procedure of the state of California and the early decisions construing the statute held that the *right of the defendant* to have the action against him tried in the county of his residence was absolute under the statute and that the court has no discretion in the matter. (*Watkins* v. *Degener,* 63 Cal. 500; *Williams* v. *Keller,* 6 Nev. 141.) As was said in *Brown* v. *Happy Valley Fruit Growers,* 206 Cal. 515, 521, 274 Pac. 977, 979: ''The right of a defendant to have an action brought against him * * * in the county in which he has his residence is an ancient and valuable right, which has always been safeguarded by statute and is supported by a long line of judicial decisions.''

While the right given the defendant by section 9097, Revised Codes, to demand that the action against him be tried in the proper county is a valuable one, yet it is a right which may or may not be claimed by defendant (*Stanton Trust & Savings Bank* v. *Johnson,* supra; *O'Hanion* v. *Great Northern Ry. Co.,* 76 Mont. 128, 245 Pac. 518), for section 9097 provides: ''If the

county in which the action is commenced is not the proper county for the trial thereof, *the action may, notwithstanding, be tried therein,* unless the defendant, at the time he appears and answers or demurs, files an affidavit of merits, and demands, in writing, that the trial be had in the proper county.''

The defendant in this action complied with the above statutory provisions. He filed a demurrer to the complaint and, at the same time, a demand in writing that the cause be transferred to Missoula county for trial supported by an affidavit of merits. It is conceded that defendant's demand was made in the manner and within the time prescribed by section 9097, Revised Codes, supra.

The law *does not require* that the parties to a contract agree upon a place for the performance of their contract but it *permits* them to so agree. When, at the time of contracting, the parties have agreed upon a particular county wherein they mutually intended their contract *was to be performed* such agreement will be respected and given effect for it is a part of the freedom of contract to select the place where a contract shall be performed. In ▮ order to give full effect to the mutual intention of parties the legislature has enacted, as a permissive exception to the general venue rule declared in the first sentence of section 9096 an additional provision, appearing in the second sentence of the section, designating the county wherein, at the time of contracting, the parties had agreed their contract *was to be performed* as a proper county for the trial of an action based thereon. This *performance exception,* however, applies only to such actions as are based upon contracts which plainly show, either (a) by their express terms or (b) by necessary implication therefrom, that the contracting parties, at the time of contracting, did mutually agree upon a particular county other than that of defendant's residence wherein they intended that their contract *was to be performed.* The *performance exception* set forth in the second sentence of the general venue statute, section 9096, provides: ''Actions upon contracts *may* be tried in the county in which the

contract *was to be performed."* (Emphasis ours.) It will be noted that in enacting this provision the legislature used the permissive word "may."

"Such a provision furnishes an exception to the general rule that defendant must be sued in the county wherein he resides, and confers a purely statutory right. It applies only to contracts which by their terms are to be performed or under which payment is to be made in a particular place, but where such terms exist they permit suit to be brought in the county fixed by them, although the defendant resides in another county." (67 C. J. title Venue, sec. 33, pp. 30, 31.) "The right of a plaintiff to have an action tried in another county than that in which the defendant has his residence is exceptional, and, if the plaintiff would claim such right, he must bring himself within the terms of the exception." (*Brady* v. *Times-Mirror Co.,* 106 Cal. 56, 39 Pac. 209, 210.)

In 67 Corpus Juris, Title "Venue," it is said: "To bring a contract within the operation of statutes of the character under consideration the obligation to perform in a particular county *must be plainly present either under the express terms of the contract or by necessary implication therefrom* and venue cannot be conferred on a doubtful construction of the contract. (Sec. 38, p. 33.) * * * The particular county must be fixed and certain *at the time the contract is executed, * * *.* The statute applies only in a case where the party, *at the time of executing the contract,* agrees to perform his part thereof in some particular county other than his residence and does not apply to a provision of a conditional sales contract allowing the other party to designate the place of payment. (Sec. 39, p. 34.) * * * Statutes of the character under consideration have frequently been applied in actions arising out of contracts for the sale of personalty. To maintain suit in another county than that of defendant's residence plaintiff *must clearly show the facts relied on to bring the case within one of the exceptions to the rule and the contract must state so clearly that it is to be performed in another county than that of defendant's residence that no other fair construction can be placed*

*upon it.* (Sec. 50, p. 39.) * * * Statutory provisions creating exceptions to the general rule recognizing a defendant's privilege to be sued in his own county will not be gvien a strained or doubtful construction. * * * Agreement must be clear. A mere direction by the seller as to the place of payment is not sufficient, nor can a promise to remit to cover the purchase price be sued upon by the seller in the county of the point to which the remittance is to be made." (Sec. 51, p. 41.)

It is not the fact that the action is founded upon a contract but the fact that the contract sued upon indicates the particular county in which, at the time of contracting, the parties mutually intended it *was to be performed* that brings the action within *the performance exception* provided in the second sentence of section 9096. In the early case of *Yore* v. *Murphy*, 1891, 10 Mont. 304, 25 Pac. 1039, 1040, in determining the question of venue and whether the action sounded in contract or in tort, this court observed "If in contract, it seems that the face of the contract must disclose that it was to be performed in the county in which the action was commenced, in order to lay and retain venue in that county." The words, "the county in which the contract was to be performed," employed in the statute, refer to contracts which by their terms indicate that they were to be performed in a particular county. (*Lamar Alfalfa Milling Co.* v. *Bishop*, 80 Colo. 369, 250 Pac. 689.)

Performance consists in the doing of the things promised to be ▮ done. The obligation may be for the delivery of money only in which event the performance is called payment. (Sec. 7429, Rev. Codes.) However, the contract before us called for the doing of various things other than the delivery of money, hence payment alone would not fulfill the obligation nor constitute performance of the contract. Thus has the word "performance" a more comprehensive meaning than the word "payment" and, since the legislature, in framing the statute, employed the more comprehensive phrase "was to be performed" without limiting its meaning, either by context or qualifying word, it is to be accepted in its broadest signification.

The contract before us having been reduced to writing, "the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of" Chapter 108 of the Civil Code. (Sec. 7530, Rev. Codes.) It is conceded that the contract contains no express stipulation designating any particular county as "the county in which the contract *was to be performed.*" (Sec. 9096, Rev. Codes.) The venue of an action based upon such contract is regulated by the general rule alone, unless it may be said that the nature of the contract itself, considered in connection with the facts and circumstances under which it was made, including the matter to which it relates and the pertinent provisions of the code (sec. 7538, Rev. Codes; *Bank of Yolo* v. *Sperry Flour Co.,* 141 Cal. 314, 74 Pac. 855, 65 L. R. A. 90), plainly indicate that, at the time of contracting, it was then the mutual intention of the parties that the contract *was to be performed* in a particular county other than that of defendant's residence.

The legislature has enacted certain statutes which prescribe the rules by which "*all* contracts, whether public or private, are to be interpreted." (Sec. 7526, Rev. Codes.) These provisions are obligatory on the courts. "A contract must be so interpreted as to *give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.*" (Sec. 7527, Rev. Codes.) (Emphasis ours.) "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Sec. 7532.) "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." (Sec. 7538.) "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, *at the time of making it,* that the promisee understood it." (Sec. 7540.) Where a contract "does not indicate a place of performance," it is to be interpreted "according to the law and usage of the *place where it is made.*" (Sec. 7537.) (Emphasis ours.) "All things that in law or usage are considered as incidental to a contract,

or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded.'' (Sec. 7547.) ''Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention.'' (Sec. 7546.) ''However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.'' (Sec. 7539.)

This contract involves a mutual agreement to sell and buy an interest in a business located in Missoula county. (Sec. 7583, 7586, Rev. Codes.) The property which the plaintiffs agree to sell and the defendant to buy was deliverable at Missoula, *the place* in which it was at the time of *making* the agreement. (Sec. 7601.) Upon its delivery, in the absence of agreement to the contrary, the defendant buyer, *then and there,* became obligated to ''pay the price of the thing sold.'' (Sec. 7622.) The statutory *time* of payment was modified by express stipulation in the contract agreeing to the payment of the price in monthly installments but the statutory *place* of payment, being *the place* where the property was at the time of the making of the agreement (sec. 7601), was not modified or changed nor is there anything in the contract or about its making that shows any intention on the part of the parties to provide any other or different place for payment of the price than Missoula where the property was at the time of contracting. In 17 C. J. S., title Contracts, section 357, page 815, it is said: ''A contract is performable at the place stipulated by the parties, or, in the absence of a stipulation, at the place where the parties supposedly understood at the time of the contract that it was to be performed. * * * In the absence of an express stipulation or of facts and circumstances showing that the parties intended performance to be elsewhere, the place of performance is deemed to be the place where the contract was made.''

When the terms of the agreement are considered in the light of common usage and the matter to which the agreement relates,

it is clear that Missoula county was the place in which the contracting parties, at the time of contracting, intended their contract *was to be performed,* but since this is the county in which the defendant resided at the commencement of the action the venue here is regulated by *the rule* rather than by the *performance exception* provided in section 9096, Revised Codes. In *Swartz* v. *California Olive Growers' Packing Corp.,* 56 Cal. App. (2d) 168, 133 Pac. (2d) 20, 22, it was said: "Inasmuch as the contract specified no place of performance it was performable in the county in which the circumstances attendant upon the execution of the writing indicate that the parties intended as a theater of its performance." (See also *Joe Lowe Corp.* v. *Rasmusson,* 53 Cal. App. (2d) 490, 127 Pac. (2d) 1002.)

Except for the causes enumerated in sections 9093, 9094 or 9095, Revised Codes, the venue of all civil actions is regulated by the provisions of section 9096. In the following cases involving actions upon contracts the county of defendant's residence, under the first sentence of section 9096 declaring *the rule,* was held to regulate the venue, viz.: *Wallace* v. *Owsley,* 11 Mont. 219, 27 Pac. 790; *McDonnell* v. *Collins,* 19 Mont. 372, 48 Pac. 549; *Bond* v. *Hurd,* 31 Mont. 314, 78 Pac. 579, 3 Ann. Cas. 566; *State ex rel. Schatz* v. *District Court,* 40 Mont. 173, 105 Pac. 554; *Feldman* v. *Security State Bank,* 62 Mont. 330, 206 Pac. 425; *McKinney* v. *Mires,* 95 Mont. 191, 26 Pac. (2d) 169. In the following cases the county in which the contract was to be performed, under the second sentence or *performance exception* of section 9096 was held to regulate the venue, viz: *State ex rel. Coburn* v. *District Court,* 41 Mont. 84, 108 Pac. 144; *State ex rel. Interstate Lumber Co.* v. *District Court,* 54 Mont. 602, 172 Pac. 1030; *State ex rel. Western Accident & Indemnity Co.* v. *District Court,* 55 Mont. 330, 176 Pac. 613; *Hough* v. *Rocky Mountain Fire Ins. Co.,* 70 Mont. 244, 224 Pac. 858; *Stiemke* v. *Jankovich,* 72 Mont. 363, 233 Pac. 904; *Silver* v. *Morin,* 74 Mont. 398, 240 Pac. 825; *Courtney* v. *Gordon,* 74 Mont. 408, 241 Pac. 233; *H. Earl Clack Co.* v. *Staunton,* 100 Mont. 26, 44 Pac. (2d) 1069; *Kroehnke* v. *Gold Creek Mining Co.,* 102 Mont. 21, 55 Pac. (2d) 678; *Colbert Drug Co.* v. *Elec-*

*trical Products Consolidated,* 106 Mont. 11, 74 Pac. (2d) 437, and *Thomas* v. *Cloyd,* 110 Mont. 343, 100 Pac. (2d) 938.

Our early decisions uniformly held that *the performance exception* of the statute applies only to actions on express contracts (*Bond* v. *Hurd,* supra) wherein the contract sued upon discloses on its face that it was to be performed in a particular county other than that of defendant's residence (*Yore* v. *Murphy,* supra) ; and that "in all other cases" the venue was regulated by the first sentence of section 9096 declaring the general rule governing place of trial.

In *State ex rel. Coburn* v. *District Court,* 1910, supra, the ▉ court departed from its former decisions and held *the performance exception* to be applicable to an action on a contract wherein the contract failed to state in terms where it was to be performed. The opinion not only fails to distinguish our former decisions but it omits to refer to any of them.

. In *State ex rel. Interstate Lumber Co.* v. *District Court,* 1918, supra, the court further departed from its former construction of the general venue statute and : (1) *held,* that the provision of the first sentence of the statute declaring *the rule* is wholly inapplicable to actions upon contracts excepting only actions on contracts performable outside of the state; (2) *held,* that the *performance exception* is applicable to actions on contracts of every kind, whether express or implied; (3) *held,* that the venue of all actions on all contracts, excepting contracts performable outside the state, is regulated by the provisions of the *performance exception* only; (4) *held,* that the permissive word "may" in the performance exception of the statute should be given the force of the imperative word "must;" (5) *held,* that the residence of the defendant is no longer a material consideration for determining the venue of either actions upon contracts or actions for torts, and (6) specifically overruled the Montana cases of *Wallace* v. *Owsley,* supra, *McDonnell* v. *Collins,* supra, *Bond* v. *Hurd,* supra, and "all the decisions which are not in harmony with the conclusion herein expressed." [54 Mont. 602, 172 Pac. 1032.] No decision theretofore rendered by this court is in har-

mony with the above holdings. The only case theretofore decided by this court which is not in hopeless conflict with the conclusion therein expressed is the *Coburn case, supra,* and it assigns wholly different reasons from those advanced in the *Interstate Lumber Co. case,* supra.

Provisions similar, and in some cases identical with those of section 9096, Revised Codes, are found in the venue statutes of other states, yet we have found no other court that has found it impossible to construe the statute as written or that holds that unless the word ''may'' therein be changed to ''must'' the provision should be rendered meaningless. For example, identical provisions are found in the general venue statute of Colorado where the Supreme Court of that state, in *Kimberlin* v. *Rutliff,* 93 Colo. 99, 23 Pac. (2d) 583, 584, said: ''The contract is silent as to place of performance. In that situation, the Code provision relative to the right of trial in the county where the contract is to be performed is not applicable. *Such provision has reference to contracts which by their terms are to be performed at a particular place.''* (See, also *E. F. Gobatti Engineering & M. Corporation* v. *Oliver Wells Works,* Colo., 1943, 139 Pac. (2d) 269, and *Palfreyman* v. *Trueman,* Utah 1943, 142 Pac. (2d) 677.)

The Utah statute construed in *Palfreyman* v. *Trueman,* supra, clearly applies only to written contracts and to only such of those as plainly and definitely indicate a particular place of performance, but this court uniformly held, prior to the decision in the *Coburn case,* that the performance exception of our statute likewise applied only to express contracts and to only such of these as, in terms or by necessary implication therefrom, indicate a particular place in which the parties intended that the contract was to be performed. In all other cases, including all cases where any doubt or uncertainty exists as to whether the parties intended that the contract was to be performed in a particular place or in which they omitted plainly to indicate a particular place of performance, it was held that the performance exception did not apply and that the venue of an action brought on such contract

should be determined under the provisions of the first sentence of section 9096, Revised Codes, wherein is declared the rule.

However, in the *Coburn case*, 1910, supra [41 Mont. 84, 108 Pac. 145], a contract of employment in which "there was not any place of payment mentioned" was held to come within the performance exception. To accomplish this result, the court indulged the presumption that at the time of contracting, by omitting all reference to any place of performance, the contracting parties thereby manifested an intention to incorporate in their contract the old English rule relating to tender, viz: "that, where the place of payment is not specified, the debtor must seek his creditor, if within the 'four seas,' and make tender to him," where the creditor has his place of business, or where the creditor resides, or wherever he may be found. In addition to relying upon the tender rule the court also cited with approval the California case of *Bank of Yolo* v. *Sperry Flour Co.*, supra, which neither applied nor involved the tender rule. The next departure from the construction theretofore given our general venue statute occurred in the *Interstate Lumber Co. case*, 1918, supra, and, as before stated, the decision was based upon entirely different reasons from those assigned in the *Coburn* decision. In the *Interstate Lumber Co. case*, the court by its construction of the general venue statute (sec. 9096, Rev. Codes) inserted into the statute the imperative word "must" in lieu of the permissive word "may" and held that the term "contract," as used in the general venue statute, must be accepted in its broadest signification and as including every kind of contract, whether express or implied. By so construing the term "contract" and by inserting the word "must" for the word "may" used in the statute, the court entirely eliminated the application of the venue rule declared in the first sentence of section 9096 in any action upon contract irrespective of whether or not any place of performance was stipulated therein. To so change and amend the venue statute required the action of the legislative department of the government, the powers of which the judicial department is prohibited from exercising. (Constitution, Article IV.) The court

is charged with the duty of ascertaining and giving effect to the intention of the legislature in enacting the statute and of ascertaining and giving effect to the intention of the contracting parties in making the contract. The court may not rewrite or remake either the statute or the contract. We must take each as it is written. The intention is to be ascertained from what the statute or contract contains and not from what is omitted therefrom. Section 10519, Revised Codes, provides: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

The rule relating to tender invoked in the *Coburn case*, supra, is not only inconsistent with but it is the antithesis of the general rule regulating venue. The venue rule is for the purpose of determining, at the outset, the proper place for the trial of an action and it is stated in terms of parties to an action and is to the effect that in the absence of facts which clearly bring the action within the terms of some statutory exception, the venue shall be fixed in the county in which the defendant resides at the time suit is commenced.

The tender rule, on the other hand, is not stated in terms of parties to a civil action but it is stated in terms of debtor and creditor and, to be applied to venue, the tender rule must be translated from the terms of debtor and creditor in which it is stated to the terms by which the parties to a civil action are known. (Sec. 9009, Rev. Codes.) At the commencement of an action and in advance of the trial, which party to the lawsuit is the debtor and which is the creditor? To presume that the plaintiff in the action is the creditor is to presume that he will prevail in the lawsuit. However, plaintiffs do not always win. Frequently the action results in a judgment for the defendant and sometimes the defendant is awarded judgment on a counterclaim in which event the defendant is clearly the judgment creditor.

If, however, the action is upon a contract which does not in terms, or by necessary implication therefrom, indicate that it was to be performed in a particular place and if we presume that the place of performance contemplated by the statute is the same as the place of payment and if we presume in advance of the trial that the plaintiff is the crdeitor and if we presume that the tender rule is applicable and if we presume that the contracting parties are presumed to know the law and that, at the time of contracting, they intended that such law, i.e., the rule relating to tender, should be inserted and read into their contract, and that thereby a place of performance is fixed as any county wherein plaintiff had his place of business or wherein he resided or wherein he happened to be when he instituted suit, then, by simply indulging such presumptions, would the general venue rule be entirely construed out of and eliminated from the general venue statute, and in lieu thereof would be inserted the tender rule which makes the plaintiff's place of business or residence or whereabouts the determining factor controlling venue.

The court, however, may not resort to such presumptions to remake the contract or rewrite the statute for a conclusion based upon a double presumption is not permissible (*Holt* v. *Sather*, 81 Mont. 442, 457, 264 Pac. 108) and *a fortiori* a conclusion based upon a chain of presumptions will not be tolerated. (*Doran* v. *United States Building & Loan Ass'n.*, 94 Mont. 73, 78, 20 Pac. (2d) 835.)

The principal purpose of the legislature in enacting section 9096, Revised Codes, was to preserve and declare the common-law rule governing venue and to require its application to all cases other than those specifically excepted from its operation and this purpose may not be frustrated by reading into the statute the tender rule which brings about the opposite result from that intended by the legislature. The tender rule may not be invoked to circumvent the general venue rule and for these reasons we specifically overrule *State ex rel. Coburn* v. *District Court,* supra, *State ex rel. Western Accident & Indemnity Co.* v. *District Court,* supra, *Hough* v. *Rocky Mountain Fire Ins Co.,*

supra, and such other of our decisions as have applied the tender rule for the purpose of determining the venue of actions upon contracts. Only uncertainty and confusion can result from attempts to read the tender rule into our general venue statute. To illustrate, may we assume that at the Silver Wave Mine in Broadwater county, mentioned in the *Coburn case,* 56 miners had been employed; that each miner resided in a different county in this state; that upon failure to pay them the wages due for labor which they had supplied in operating the mine, the miners each returned to his home and there, in the county of his residence, each should institute a separate suit against the employer for the recovery of the wages due. Application of the tender rule in determining the venue would compel the defendant employer to defend a separate action in each of the 56 counties of this state and would defeat his statutory right to have the actions transferred for trial to the county of his (defendant's) residence or to Broadwater county wherein the contracts were made and the labor performed. To such doctrine, this court declined to subscribe in *Feldman* v. *Security State Bank,* 62 Mont. 330, 206 Pac. 425, which on principle may not be distinguished from the case at bar.

We also expressly disapprove of the holding in the *Interstate Lumber Company case* that the word "may" in the second sentence of section 9096, Revised Codes. should be given the force of "must." The law is that the word "may" in the statute must be construed according to the context and the approved usage of the language (sec. 15, Rev. Codes) and that in construing the statute, every word, clause and sentence must be given effect, if it is possible to do so, to the end that its different provisions may be made consistent and harmonious and each be assigned an intelligent meaning. (*State ex rel. Interstate Lumber Co.* v. *District Court,* supra.)

We further hold that the provisions of the first sentence of section 9096 applies to all actions upon contract and to all actions for torts but that such provisions are not exclusive, for a tort action *may* also be tried in the county in which the tort was com-

mitted and actions on contract *may* also be tried in the county in which the contract was to be performed provided that the contract sued upon indicates, either in terms or by express implication therefrom, a particular county in which it was to be performed other than the county in which the defendant may reside at the commencement of the action.

In the *Coburn case,* it would seem that the nature of the contract and the facts and circumstances surrounding its making manifest the mutual intention of the employers and employees at the time the contract was entered into. The manifestation of mutual intent may be made wholly or partly by written or spoken words or by other acts or conduct, for it would seem that in the absence of agreement or facts and circumstances indicating a contrary intent, when persons are employed at a mine, mill, smelter, ranch or home and there perform labor and render services, it is contemplated by the parties, employer as well as employed, that upon the performance of the services the employee shall receive and be paid his wages there at the mine, mill, smelter, ranch or house where the work was performed. These are common, everyday transactions. They must be so viewed by the courts. The contracts must be interpreted in a common-sense manner such as would be given them by the contracting parties and without resort to some ancient rule brought over from England governing tender of which the contracting parties in all probability had never heard and upon which there is nothing other than fiction and presumptions based upon presumptions to evidence any mutual intention to incorporate into their contract. ''Centuries ago the practice became settled that where work is to be done by one party to a contract, and payment is to be made by the other, the performance of the work, when no relative times for the performances are specified in the contract, must precede payment. It is so generally true that parties now contract with reference to this custom, that apart from any manifestation of intention the law imposes a constructive condition.'' (Restatement of the Law. Contracts, sec. 270, p. 393.)

For these reasons and wholly apart from any and all applica-

tion of the tender rule, we are of the opinion that this court reached the correct result in the *Coburn case* and that in the absence of anything more specific than appeared in the record in that case "that the entire contract was to be performed at the mine in Broadwater county, and that the parties to the agreement never contemplated that the men engaged in daily labor at the mine should have to go to some other county to collect their wages." In the cited case of *Bank of Yolo* v. *Sperry Flour Co.,* supra [141 Cal. 314, 74 Pac. 855, 65 L. R. A. 90], the Supreme Court of California said: "The plaintiff had the right to commence the action in the county where the contract was made, or where it was to be performed. * * * In a suit upon the contract of a corporation, where no place of performance is expressly stipulated, it ought to be held performable in the place where the circumstances, viewed in the light of pertinent code provisions, indicate that the parties expected or intended it to be performed."

The case of *Wallace* v. *Owsley,* supra, is on all fours with the *State ex rel. Interstate Lumber Co.* v. *District Court case,* supra. In each case the seller, a merchant, at the instance and request of the buyer, sold and delivered to the buyer at the seller's place of business in Helena, Lewis and Clark county, Montana, merchandise for an agreed price. Upon failure of the buyer to pay the agreed price for the goods so delivered to him, the seller commenced action against the buyer in Lewis and Clark county to recover the price. In each case the buyer claimed to be a resident of Silver Bow county when suit was instituted and in each case the buyer was served with summons in Silver Bow county, to which county, each buyer demanded that the action be transferred for trial. In the *Owsley case* this court held that the county of buyer's residence was the proper place for the trial while in the *Interstate Lumber Company case,* under the same statute and identical facts, the court held that the county wherein the goods were sold and delivered and the seller maintained its principal place of business was the proper county for the trial. If we are to agree that implied contracts as well as express con-

tracts are contemplated by the provisions of the performance exception, then we agree with the result reached in the *Interstate Lumber Company case,* supra, but disapprove of the reasons assigned therefor. In the *Owsley* and *Interstate Lumber Company cases,* supra, a buyer presented himself at the established place of business of a merchant and there, at the buyer's request, was delivered personal property at a price to which the buyer agreed. In the absence of any agreement or facts and circumstances clearly showing a contrary intention, such a transaction contemplates that there *at the time* when the merchandise was delivered to the buyer and *at the place* where the merchandise was delivered to the buyer, he would be expected to pay the price and that, if the buyer left the place where the goods were delivered without making payment therefor, he would at a future date return to that place and there pay to the seller the agreed price for such merchandise. This is the law governing such sales —it is understood by everyone. No writing is required to make it applicable for it is a matter of common knowledge that the vast bulk of sales of personal property is not accompanied by any written evidence thereof. (*Lewis* v. *Lambros,* 58 Mont. 555, 560, 194 Pac. 152.) A child sent to a corner grocery for a loaf of bread will, before starting on the errand, ask for the money with which to make the purchase because, without anything whatever being said respecting time or place of payment; the child understands that it is contemplated by all the parties, in the absence of a contrary arrangement, that the price of the loaf shall be handed to the merchant at the time and place the loaf is delivered. Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions. So the Codes provide: "Personal property sold is deliverable *at the place* where it is at the time of the sale or agreement to sell * * *." (Sec. 7601, Rev. Codes) and, "A buyer must pay the price of the thing sold on its delivery * * *." (Sec. 7622, Id.)

*State ex rel. Western Accident & Indemnity Co.* v. *District Court,* supra, involved an action to recover, under the terms of an indemnity contract, for a loss sustained in Richland county by

the plaintiff indemnitee. Contracts of indemnity and insurance are by their nature quite different from contracts of sale such as were involved in *Wallace* v. *Owsley,* supra, and the *Interstate Lumber Company case,* supra. The place of performance of a contract of indemnity, as regards the venue of an action thereon, is the county wherein the loss or injury occurs or wherein a judgment is obtained against the assured or indemnitee. (*Malmgren* v. *Southwestern Automobile Ins. Co.,* 201 Cal. 29, 255 Pac. 512.) It was neither necessary nor proper to invoke the tender rule of the *Coburn case,* supra, to determine the place of performance of the contract of indemnity or the venue of the action founded thereon in the *Western Accident & Indemnity Company case,* supra, for there the obligation or liability of the defendant indemnity company, under its contract, arose at the time when and in the county where the loss occurred. While the contract was silent as to the place of payment, yet from the very nature of the contract it was plainly contemplated by all parties to the contract at the time of contracting that in the event of loss within the terms of the contract, the amount of such loss would be paid to the indemnitee at the place where the loss would be sustained or where judgment against him would be rendered. It was not place of tender but the place of loss or injury that was to fix the place of performance and regulate the venue of an action to recover on the contract.

A sufficient number of our former decisions have been reviewed to show that the tender rule is wholly inconsistent with the general venue rule. The order of the district court is reversed and the cause remanded with directions to transfer the action to Missoula county for trial.

MR. JUSTICE ANDERSON concurs.

MR. JUSTICE MORRIS:

It is my view that the parties to the contract did not, at the time they entered into the contract, have any notion of any place of performance other than the county of Missoula, and the intention of the parties at the time the contract was entered into

should not be changed except by mutual agreement. I do not concur in all that is said in the opinion by Mr. Justice Adair, but I concur in the result.

MR. JUSTICE ERICKSON:

I dissent. I am of the opinion that the prior decisions of this court, *State ex rel. Interstate Lumber Co.* v. *District Court,* 54 Mont. 602, 172 Pac. 1030; *State ex rel. Coburn* v. *District Court,* 41 Mont. 84, 108 Pac. 144; *State ex rel. Western Accident & Indemnity Co.* v. *District Court,* 55 Mont. 330, 176 Pac. 613, and *Silver* v. *Morin,* 74 Mont. 398, 240 Pac. 825, correctly interpret that portion of section 9096, Revised Codes, relating to venue now before us. That portion simply states: "Actions upon contracts may be tried in the county in which the contract was to be performed, * * *." As construed by this court in the decisions above cited, this simple language has been held to require that upon proper application the cause be tried in the county where performance of the contract was to be had, applying the usual statutory provisions to determine place of performance if the contract is silent as to the place where performance is to occur. Further the court has held that where the application is made but one proper place for trial exists and that is in the county of performance. It seems to me that this interpretation of the language is entirely reasonable. The majority substitutes the rule prevailing in Colorado where the same statutory provision exists. Under that rule this provision of section 9096 has no application where the contract does not specifically provide the place for performance or where the place for performance is not necessarily implied from the terms of the contract. Further, the majority states that even though section 9096 does apply to the contract, yet there are other places for trial and no party may demand trial in the place where the contract is to be performed so as to exclude trial in the county where the defendant resides or where the plaintiff resides and the defendant may be found.

I cannot find the confusion that disturbs the majority under the decisions of this court up to this date. Under the past de-

cisions, where the contract is silent as to the place for performance or where the place for performance cannot be necessarily implied from the general language of the contract, the ordinary tests for determination of place for performance were applied, and those tests are statutory and easy of determination. It seems to me that if the majority view is to be adopted it would have to be limited under the terms of the statute to contracts where there was an express provision for the place for performance and to go further and suggest that the place for performance can be determined by necessary implication is not warranted and clearly when you apply the latter test of necessary implication might it not be said that this court has already applied that test when it has held as it has that it must necessarily be implied that where the contract is silent as to the place for performance the parties necessarily contracted with the statutes in mind and the place for performance was, in effect, placed in the contract for this reason?

Much reliance is placed on section 33 et seq. of 67 C. J. There are general statements therein contained to the effect that the section in the venue statutes here under consideration has no application to contracts which are silent as to the particular county in which the obligation is to be performed. The writer cites cases from Illinois, Iowa and Texas in support of this general proposition and the Montana decisions are not cited. The statutes in those three states, as well as in the state of Utah, are entirely different from ours. The Iowa statute provides: "When, by its terms, the written contract is to be performed in any particular place * * *", (Code 1939, sec. 11040), then trial may be had in the place of performance. The Illinois case cited in the footnote of 67 C. J. sec. 33, was decided at a time when the Illinois statute provided that trial may be had "where the contract may have specifically been made payable." (See Chapter 83, sec. 2, Revised Laws of Illinois 1845.) The Texas statute provides: "If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, then trial may be had in the

county of performance. (Vernon's Ann. Civ. St. art. 1995, subd. 5). The Utah statute is: ''When the defendant has contracted in writing to perform an obligation in a particular county of the state * * *'' (Utah Code 1943, 104-4-4,) trial may be had in the county where the obligation is to be performed. It is upon these statutes that the writer relies in his general statements in 67 C. J. and it is obvious that the statements are not authority in the construction of our statutes. By the terms of these statutes, the contract itself must contain in its body in writing the designation of the place in which performance is to be had. Our statute, of course, is not comparable in any way with these statutes. Under our provisions the contract need not be in writing. Our legislature contented itself with the mere statement that a proper place for trial is where the contract ''was to be performed.'' Even in the four states whose statutes have been quoted from above the court has gone a long way to relax the legislative rule, as in all of those states the court has held that even though there is no express provision in the body of the written contract as to place for trial, the court may decide that by necessary implication one particular place was intended.

As has been indicated above, Colorado with exactly the same statute has held as the majority does here. The leading Colorado case and the one upon which all the later cases are based, is *Brewer* v. *Gordon,* 27 Colo. 111, 59 Pac. 404, 83 Am. St. Rep. 45, decided in 1899. The suit in that case was on an indemnity bond. It was held that suit must be brought in the county where the defendant, the indemnity company, was, rather than the county where the indemnity was to be paid. We had exactly the same question before us in the case of *State ex rel. Western Accident & Indemnity Co.* v. *District Court,* supra. Peculiarly enough, the county involved in that case was also Richland county; and we held directly, some twenty years after the Colorado case, that Richland county, the county where the bond was to be paid, was the proper place for trial. In reaching its conclusion that the contract itself must provide the place for performance before the county of performance should be the proper

place for trial, the Colorado court, in the *Brewer case,* relied on cases from Texas and Iowa and the entire bases of the decision were these prior cases from these two states. No discussion of the Colorado statutes is had in the *Brewer case* and the sole bases for the decision are these prior Texas and Iowa ones. In no case since *Brewer* v. *Gordon* has the Colorado court distinguished between their statute and the statutes of other states and all of the later cases are based entirely on *Brewer* v. *Gordon* and in none of the later Colorado cases has there been any discussion of the rationale of the court's conclusion, that the exception of the venue statute does not apply when the contract is silent as to the place of performance. That the Colorado rule has not resulted in entire satisfaction in that jurisdiction is apparent by the many many cases following *Brewer* v. *Gordon.* A few of those cases are: *People ex rel.* v. *District Court,* 66 Colo. 330, 182 Pac. 7; *People ex rel. Tripp* v. *Fremont County Court,* 72 Colo. 395, 211 Pac. 102; *Lamar Alfalfa Milling Co.* v. *Bishop,* 80 Colo. 369, 250 Pac. 689. As recently as 1934, the matter was again brought before that court in *Kimberlin* v. *Rutliff,* 93 Colo. 99, 23 Pac. (2d) 583. .

That the majority has some doubt as to the correctness of its position in overruling the prior decisions of this court is indicated by the fact that it discusses at some length the question of whether or not it must be implied from the nature of the agreement and understanding that Missoula county was the place for performance of the contract. If that were the case there would be no necessity for discussing the earlier Montana decisions as they recognize the fact that if the contract itself either expressly or by necessary implication provides a place for performance, then recourse may not be had to the tender statute or any other statute, as they apply only in the absence of a contract provision fixing the place for performance. I am not in agreement with what the majority says as to this matter. The necessary implication from the whole transaction if there is one, is that payment could be made to the parents wherever they might be. A pertinent question would be, if this defendant were

to pay up the arrears under his contract today, and so discharge his obligation, where in Missoula county and to whom would he make that payment? The obvious answer is that there is nothing in the contract, either expressly or by implication regarding any place or person in Missoula county where he could make such a payment and the only place that he could make an effectual tender is that provided by the statute. The majority carves out exceptions to its own rule, as for example it says that in the case of an over-the-counter sale of goods the obvious place for performance and the one which must necessarily, though there is no written contract and nothing from which a necessary implication can be drawn, be implied so far as payment of the money is concerned, is in the place, of business of the seller. To my mind this is mere judicial legislation. I can find no Colorado case making such an exception nor can I find any in the other states from whose statutes I have quoted in this dissent.

I think the trial court's order should be affirmed.

MR. CHIEF JUSTICE JOHNSON:

Although I deplore the necessity, I feel impelled again, as in *Yellowstone County* v. *Wight,* ante p. 411, 145 Pac. (2d) 516, to dissent separately in order to point out what seem to me the essential errors of the majority and also to emphasize the fact that as in the *Wight case* and as in *In re Irvine's Estate (Wild* v. *Hall),* 114 Mont. 577, 139 Pac. (2d) 489, 147 A. L. R. 882, the majority dispose of the present controversy without expressly reversing the law although they badly unsettle it. While three members concur in the disposal of the case, the form of one member's concurrence, as in the two cases mentioned above, does not fully indicate in what respects he agrees with the extended treatise signed by the other two members constituting the majority. Thus the bench and bar cannot know what the majority of this court think the law is, or ought to be, but only that it does not consider that the law is, or ought to be, as declared by this court during more than half a century.

As the majority decision points out, the territorial legislature

in 1871, nearly three-quarters of a century ago, altered the defendant's "ancient and valuable right" to be sued in the county of his residence, by providing that actions in general shall be tried either in that county "or where the plaintiff resides, and the defendants, or any of them, may be found;" thus, as to the defendant, making the test not merely his residence, but his "residence or whereabouts," as the court said in *State ex rel. Interstate Lumber Co., infra;* at the same time it provided that "actions upon contracts may be tried in the county in which the contract was to be performed, and actions for torts in the county where the tort was committed." Those provisions have since been re-enacted and carried through the successive compiled and revised codes without amendment, and now appear as section 9096, Revised Codes of 1935. It must be emphasized that in the latter provision there is only one "may" and that whatever its meaning as applied to contract actions must also be the same as applied to tort actions.

In *State ex rel. Interstate Lumber Co.* v. *District Court,* 54 Mont. 602, 172 Pac. 1030, 1031, this court in a unanimous opinion written by Mr. Chief Justice Brantly, after referring to the first provision of the section, making venue in general dependent upon where the defendant resides, or where the plaintiff resides and the defendant may be found, said with reference to the special provision relative to contract and tort actions:

"The last sentence, however, excepts out of the application of this general provision, actions upon contracts and actions for torts, and requires the place of trial in these cases to be determined by considerations wholly apart from the residence or whereabouts of the defendant. In the one case, the place of trial is determined by an answer to the inquiry, Where was the contract to be performed? And in the other, Where was the tort committed? * * *

"To determine, then, whether an action in either of these two classes has been commenced in the proper county, the only question the court may consider and determine is where, in the one case, the contract was to be performed, or, in the other, where

the tort was committed. As will appear below, our own decisions are not in harmony, but in two of them at least this court impliedly adopted the construction we have given the last sentence of the section, by refusing to recognize the residence of the defendant as a material consideration. (*Oels* v. *Helena & Livingston Smelting & R. Co.,* 10 Mont. 524, 26 Pac. 1000; *State ex rel. Coburn* v. *District Court,* 41 Mont. 84, 108 Pac. 144.)''

Ever since that decision was promulgated in 1918, twenty-six years ago, it has been the recognized law that the residence of the defendant has nothing to do with the venue of actions upon torts, or upon contracts the place for performance of which could be determined. Whether or not the *Oels decision* cited there constitutes valid authority to the same effect, it clearly held that the place of performance need not expressly appear by the terms of the contract. That decision was promulgated in 1891, fifty-three years ago. Since that time twenty-six regular legislative sessions (all but the first two since statehood) and numerous special sessions have been held without any legislative action to change the statute as so interpreted by this court. Nevertheless, the majority decision above proposes to change the law by now holding that a defendant is not necessarily entitled to have a tort action tried in the county where the tort was committed or a contract action in the county in which the contract was to have been performed, but that there are two other ''proper counties'' for the trial under the general provision, namely the county where the defendant resides, and the county where the plaintiff resides and the defendant may be found; and that the latter are the only proper counties for the trial of a contract action unless the place for performance appears by the terms of the contract. By this holding the majority limits the effect of the special provision to express contracts which expressly provide for the place of performance, thus adding a requirement which the legislature omitted. The majority thus destroys the certainty with which bench and bar are entitled to regard a statute of seventy-three years' standing and the judicial precedents of more than half a century, covering virtually Montana's entire period of statehood.

The majority's expressed reason is that this court was wrong fifty-three years ago and has been wrong ever since; but under the circumstances it would seem that in the absence of legislative amendment the bench and bar should be justified in regarding as definitely settled the propositions (1) that the only proper county for the trial of a contract or tort action is the county where the contract was to be performed or the tort was committed, (2) that the word "contract," being used in the statute without limitation or qualification, includes all contracts, without limitation or qualification; (3) that the place for performance need not be specifically stated in the contract, since the legislature did not so provide; and (4) that the courts should therefore determine the place of performance by reference to the nature of the contract, the circumstances under which it was made, and the law generally applicable to place of performance of contracts, including the law as to tenders. Certainly, in the absence of express contractual provisions to the contrary, the latter indicates the lawful place for the performance of a contract to pay money, as this court held in the *Coburn case,* supra, in 1910, thirty-four years ago.

I cannot concur in the belief that all these well-established propositions should be overturned. If they are overturned, the plaintiff may bring a tort action either where a defendant resides, or where the plaintiff resides and a defendant can be found, or where the tort was committed; and the cause cannot be removed from whichever county he selects, since it cannot be characterized as "not the proper county," so as to entitle the defendant to a change of venue under section 9097. The same will be true of contracts which expressly provide for a place of performance. But for the immensely greater number of contracts which are not express, or which do not expressly provide for the place of performance, the legislative provision will have nothing to do with venue, and the choice of counties will be governed entirely by the first sentence of section 9096. Perhaps that should be the law, but few members of Montana's bench and bar now believe that it is the law.

It may well be that our predecessors erred in practically all venue decisions of the last fifty-three years, and that if the questions now came before us as matters of first impression we should decide otherwise. But if this court has been wrong throughout that period with reference to the venue of tort and contract actions, the errors include the unanimous decision made by this court only eight months ago in *Maio* v. *Greene*, 114 Mont. 481, 137 Pac. (2d) 670, 671, which held that "the proper county" for the trial of a tort action was the county "where the tort was committed." The record in that case showed without controversy that all parties plaintiff and defendant resided in Missoula county and that at least one of the defendants was served there. But neither litigants nor courts considered residence of parties as relevant, and this court held that the case should be removed to Lake county, where the tort was alleged to have been committed. If the majority decision above is correct, under section 9096 the proper place of trial was the county (1) where the defendants resided, which was Missoula county, or (2) where the plaintiff resided and at least one of the defendants was found, which again was Missoula county, or (3) where the tort was committed, which was Lake county. Since, under that view, Missoula county was a proper county for trial under both the first and second provisions of section 9096, it must have been error to remove the cause to Lake county for trial; for the statutes do not authorize the transfer from one proper county to another except under the last three subdivisions of section 9098, Revised Codes, which were not applicable to the case. Although the undersigned wrote the decision in *Maio* v. *Greene,* it was concurred in without question or comment by the entire court as now constituted. Certainly if the individual views of the momentary majority of the court, rather than established principles and precedents, are to govern each case coming before it for decision, the bench and bar are entitled to rely upon some consistency in those individual views for at least eight or nine months.

Under the circumstances I feel justified in quoting here from a dissenting opinion by Mr. Justice Roberts, concurred in by Mr.

Justice Frankfurter, who, to say the least, can hardly be considered a fanatical stickler for precedent. In *Mahnich* v. *Southern Steamship Company*, 64 S. Ct. 455, 463, promulgated as recently as January 31, 1944, the dissent said:

"The evil resulting from overruling earlier considered decisions must be evident. In the present case, the court below naturally felt bound to follow and apply the law as clearly announced by this court. If litigants and lower federal courts are not to do so, the law becomes not a chart to govern conduct but a game of chance; instead of settling rights and liabilities it unsettles them. Counsel and parties will bring and prosecute actions in the teeth of the decisions that such actions are not maintainable on the not improbable chance that the asserted rule will be thrown overboard. Defendants will not know whether to litigate or to settle for they will have no assurance that a declared rule will be followed. But the more deplorable consequence will inevitably be that the administration of justice will fall into disrepute. Respect for tribunals must fall when the bar and the public come to understand that nothing that has been said in prior adjudication has force in a current controversy.

"Of course the law may grow to meet changing conditions. I do not advocate slavish adherence to authority where new conditions require new rules of conduct. But this is not such a case. The tendency to disregard precedents in the decision of cases like the present has become so strong in this court of late as, in my view, to shake confidence in the consistency of decision and leave the courts below on an uncharted sea of doubt and difficulty without any confidence that what was said yesterday will hold good tomorrow, * * *."

While the question in the *Mahnich case* was substantive rather than procedural, what was there said about the disregard of precedents is fully applicable here. In addition we have here the unusual spectacle of a present majority completely reversing itself in less than a year, and of doing it in such a way as to unsettle, without definitely resettling, the law. Hence this separate dissent.