I. W. LOVE, Plaintiff and Respondent, *v.* MON-O-CO OIL
CORP., Defendant and Appellant.

No. 9624.

Submitted November 19, 1957. Decided January 13, 1958.

319 Pac. (2d) 1056.

Brown, Sande & Forbes and Rockwood Brown, Jr., Billings, for appellant.

Church, Harris, Johnson & Williams, Great Falls, for respondent.

THE HON. WILLIAM R. TAYLOR, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, because of the latter's illness, delivered the opinion of the court.

Defendant, Mon-O-Co Oil Corporation, a corporation, appealed from an order denying its motion for change of place of trial from Fallon County to Yellowstone County.

The defendant, Mon-O-Co Oil Corporation, entered into a written contract with Paul Havaland, Trustee, whereby an oil and gas lease covering forty acres in Fallon County was sold and assigned to Paul Havaland, Trustee, and defendant, Mon-O-Co Oil Corporation, agreed with the said Paul Havaland, Trustee, to drill an oil well on said land. In addition to the oil and gas lease sold and assigned, defendant, Mon-O-Co Oil Corporation, owned oil and gas leases covering an additional 6,120 acres in Fallon County, which, in said contract, and excepting therefrom eighty acres, it also agreed to sell and assign to Paul Havaland, Trustee, should a well be completed as a commercial produceer of oil and gas on the forty acres sold and assigned; that the terms and conditions of the sale of said lease by defendant, Mon-O-Co Oil Corporation, to Paul Havaland, Trustee, and for the drilling operation on said land, were set forth specifically in the agreement.

The defendant, Mon-O-Co Oil Corporation, then entered into a written lease agreement with plaintiff, I. W. Love, whereby the plaintiff Love agreed to drill the well that defendant, Mon-O-Co Oil Corporation, had contracted to drill for Paul Havaland, Trustee. In said agreement the Mon-O-Co Oil Corporation leased from the plaintiff, I. W. Love, certain rotary drilling equipment at a monthly rental, and employed plaintiff, I. W. Love, at a specified monthly wage to supervise the drilling operation. In addition, the defendant, Mon-O-Co Oil Corporation, agreed to deliver to plaintiff, I. W. Love, certain percentages of the royalty and working interests that it was to derive from its contract with Paul Havaland, Trustee.

All of the acts required to be performed by plaintiff, I. W. Love, as his part of the contract entered into with the defendant, Mon-O-Co Oil Corporation, were to be performed in Fallon County. The defendant, Mon-O-Co Oil Corporation, is a Montana corporation, and has its principal office at Billings, but had a division office at Baker, the county seat of Fallon County. At the time of contracting with the plaintiff, I. W. Love, the defendant, Mon-O-Co Oil Corporation, and as part

of the consideration for said contract, agreed to pay for costs of transporting the plaintiff, I. W. Love's, drilling equipment from Centralia, Washington, to the well-site, to insure such equipment, to pay certain taxes, licenses, and liens owed by plaintiff, I. W. Love, in the State of Washington, and, to make a note payment owed by plaintiff, I. W. Love, to a resident of Oregon, which was secured by a chattel mortgage on the drilling equipment. The royalty and working interests were to be delivered to plaintiff, I. W. Love. The contract did not provide where payment was to be made to plaintiff, I. W. Love, by defendant, Mon-O-Co Oil Corporation, for the monthly rental of the drilling equipment, and for the monthly salary earned by plaintiff, I. W. Love. Plaintiff, I. W. Love, in his affidavit filed in opposition to the motion for change of place of trial, stated that it was agreed that payments to be made by defendant, Mon-O-Co Oil Corporation, to him were to be made in Fallon County, and that payments accordingly were made by defendant, Mon-O-Co Oil Corporation, to him in Fallon County.

Plaintiff's complaint states two causes of action. The first cause of action alleges that a well was completed as a producer on or about November 15, 1954, and that defendant is indebted to plaintiff for certain sums as rental of the drilling equipment, for expenses to be paid under the lease agreement, and that he is entitled to certain overriding royalty interests out of defendant's overriding royalty interests reserved by the defendant in its contract with Paul Havaland, Trustee. Plaintiff prays judgment for a sum certain for the rentals and personal services, and that defendant be ordered to make and execute to him good and sufficient assignments of an overriding royalty and an interest in a working agreement, both of which were provided for in the contract entered into between defendant, Mon-O-Co Oil Corporation, and Paul Havaland, Trustee, and in the lease agreement entered into between the plaintiff and defendant. In the second cause of action, plaintiff alleges that the written lease agreement made by plaintiff and defend-

ant was amended before completion of the test well whereby the defendant, Mon-O-Co Oil Corporation, agreed to give to plaintiff, I. W. Love, the right to accept, do, and carry out all future drilling operations on all of defendant's leased lands as described in its agreement with Paul Havaland, Trustee, on the same terms and for the same compensation as were offered by any other contractor; that in violation of said agreement, defendant, Mon-O-Co Oil Corporation, entered into drilling contracts on said lands with others, without giving plaintiff, I. W. Love, the right of refusal; and, that by so doing, plaintiff was damaged.

Defendant, Mon-O-Co Oil Corporation's motion for change of place of trial is based on the following grounds:

1. That at the time of the commencement of this action, defendant was, and still is, a resident of the County of Yellowstone, State of Montana, and that the district court of said county is the proper court for the trial of the above-entitled cause.

2. That the contracts, if any, alleged in plaintiff's complaint, and which purport to form the basis of plaintiff's causes of action, fail to state or provide for any place where such contracts were to be performed and that at the time of the commencement of this action, defendant was, and still is, a resident of the County of Yellowstone, State of Montana, and that the district court of said county is the proper court for the trial of the above-entitled cause.

3. That one of the causes of action, as set forth and alleged in plaintiff's complaint, is of an equitable and transitory nature and therefore governed in venue by the place of residence of the defendant, to-wit: Yellowstone County, Montana; that at the time of the commencement of this action, defendant was, and still is, a resident of the County of Yellowstone, State of Montana, and that the district court of said county is the proper court for the trial of the above-entitled cause.

The portions of section 93-2904, R.C.M. 1947, that are of concern in this decision are: "In all other cases the action

shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action   *   * Actions upon contracts may be tried in the county in which the contract was to be performed   *   *   *.''

In the case of State ex rel. Interstate Lumber Co. v. District Court, 54 Mont. 602, 172 Pac. 1030 (hereafter referred to as the Interstate case), decided May 1, 1918, this court determined that the word ''may'' appearing in the last sentence in section 93-2904, R.C.M. 1947, should be given the force of ''must.'' In the case of Hardenburgh v. Hardenburgh, 115 Mont. 469, 146 Pac. (2d) 151, decided in 1944, Justice Adair reviewed the history of the statute and the cases determined under it, and repudiated the determination in the Interstate case that the word ''may'' should be given the force of ''must.'' Justice Albert Anderson concurred in Justice Adair's opinion, and Justice Morris concurred in the result of the case, but not in all that was there said. Chief Justice Johnson and Justice Erickson wrote separate dissenting opinions in which they approved the conclusion reached in the Interstate case. In a later case, Johnson v. Ogle, 117 Mont. 419, 159 Pac. (2d) 337, decided in 1945, Justice Morris gave his reason for his decision in the Hardenburgh case, and stated his approval of the interpretation made in the Interstate case, even though it was not necessary to make such comment to determine the issue in the decision then rendered. Special concurring opinions by Justice Adair and Justice Angstman set forth their determination that error had been committed in the Interstate case in deciding that ''may'' should have the force of ''must.'' The cases referred to completely review the problem. The resulting confusion to the bench and bar is apparent.

Upon the reasoning found in the opinion of Justice Adair in the case of Hardenburgh v. Hardenburgh, and that of Justice Angstman in the case of Johnson v. Ogle, it is now decided that the word ''may'' should not be given the force of ''must'' in said statute, as was done in the Interstate case,

and that the statute means that either the county of defendant's residence, or the county where the contract was to be performed, is the proper county for the trial of the action, and if the plaintiff chooses either of those counties, defendant may not have it removed, except as stated in the last part of said section 93-2904, it is still subject to the power of the court to change the place of trial as provided by subdivisions 2, 3 and 4 of section 93-2906, R.C.M. 1947.

The law does not require that the parties to a contract agree upon a place for the performance of their contract, but it permits them to so agree. When, at the time of contracting, the parties have agreed upon a particular county wherein they mutually intended their contract was to be performed, such agreement will be respected and given effect, for it is a part of the freedom of contract to select the place where a contract shall be performed. In order to give full effect to the mutual intention of parties, the legislature has enacted, as a permissive exception to the general venue rule declared in the first sentence of section 93-2904 an additional provision, appearing in the second sentence of the section, designating the county wherein, at the time of contracting, the parties had agreed their contract was to be performed as a proper county for the trial of an action based thereon. This performance exception, however, applies only to such actions as are based upon contracts which plainly show, either (a) by their express terms, or (b) by necessary implication therefrom, that the contracting parties, at the time of contracting, did mutually agree upon a particular county, other than that of defendant's residence, wherein they intended that their contract was to be performed.

The place of performance of the contract, entered into between plaintiff, I. W. Love, and the defendant, Mon-O-Co Oil Corporation, was Fallon County. Plaintiff had the choice of having his action tried in the county of defendant's residence, or in the county where the contract was to be performed. He elected to have his case tried in the county in which the

contract was to be performed, and the judge of the district court properly denied defendant's motion for change of place of trial to Yellowstone County.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE ADAIR, (specially concurring.)

I agree that this court's opinion and decision in the case of Hardenburgh v. Hardenburgh, 115 Mont. 469, 146 Pac. (2d) 151, is here controlling and that in the instant case the trial court properly denied the motion of the defendant, Mon-O-Co Oil Corporation, for change of the place of trial from Fallon County to Yellowstone County.

International Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S.W. 630, 631, 632, was a suit by a surviving wife to recover on her deceased husband's policy of insurance insuring him against accidental death. The application for the policy sued on, the policy itself and the insurance association's by-laws contained a stipulation that all causes of action on the policy should be brought in Dallas County, Texas, where the association's home office was located. The association contended, under the above stipulation in its policy, the venue lay exclusively in Dallas County. In denying such contention the Supreme Court of Texas said:

"So the real question presented * * * is whether a statute giving a plaintiff the right to sue in several counties can be overridden by a contract undertaking to deprive him of that right. In the early case of Nute v. Hamilton Mut. Ins. Co., 6 Gray (Mass.) 174, it is announced in an opinion by Chief Justice Shaw that—

" 'The rules to determine in what courts and counties actions may be brought are fixed, upon considerations of general convenience and expediency, by general law; to allow them to be changed by the agreement of parties would disturb the

symmetry of the law, and interfere with such convenience.'

"In the recent case of Nashua River Paper Co. v. Hammermill Paper Co., 223 Mass. 8, 111 N.E. 678, L.R.A. 1916 D, 691, the court says with reference to the Nute Case:

" 'That case, as has been pointed out, states a general principle which has been adopted and prevails in all federal courts, by reason-of the binding decisions of the United States Supreme Court in Home Ins. Co. of New York v. Morse, 20 Wall. 445, 22 L. Ed. 365, and Doyle v. Continental Ins. Co., 94 U.S. 535, 24 L. Ed. 148. The same rule prevails generally in all states where the question has arisen.'

"The note on pages 696 to 702 in L.R.A. 1916D fully supports the court's statement. The Supreme Court of the United States concluded that there was no sound principle on which agreements like that before us could be upheld, saying:

" 'Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life, or his freedom, or his substantial rights. In a criminal case, he cannot, as was held in Cancemi's Case, 18 N.Y. 128, be tried in any other manner than by a jury of 12 men, although he consent in open court to be tried by a jury of 11 men. In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented.' Insurance Co. v. Morse, 20 Wall. [445] 451, 22 L. Ed. 365.

"The United States Circuit Court of Appeals of the Sixth Circuit, in Mutual Reserve Fund Life Ass'n v. Cleveland Woolen Mills, 82 F. [508] 510, 27 C.C.A. [212] 214, per Judge Lurton, said:

" 'Any stipulation between contracting parties distinguishing between the different courts of the country is contrary to public policy, and should not be enforced.'

"We are convinced that it is utterly against public policy to permit bargaining in this state about depriving courts of jurisdiction, expressly conferred by statute, over particular causes of action and defenses. Eaton v. International Travelers' Ass'n of Dallas, Tex. Civ. App., 136 S.W. 817. It follows that the stipulation for exclusive venue in Dallas county will not be enforced, and that the court did not err in overruling the plea asserting the privilege to be sued in that county alone.''

In Super-Cold Southwest Co. v. Green & Romans, Tex. Civ. App., S.W. (2d) 749, at pages 752, 753, it is said:

"Second group of assigned errors contend there was error in overruling the plea of privilege because of the provisions in the contract to the effect that all actions growing out of the contract should be had in Dallas County and further there was no jury finding that any part of plaintiffs' cause of action arose in Tarrant County. It is obvious from the facts in the record that defendant contracted with plaintiffs to construct a cold storage locker plant at Mansfield, Texas; and that Mansfield is in Tarrant County. The contract and obligation could not have been performed anywhere else. The written instrument called the 'Proposal' made by defendant begins with these words: 'Name and location of Job: Cold Storage Locker plant in the Green Grocery Store located at Mansfield, Texas.' There is a conflict in the evidence as to where the different instruments were actually signed by the parties, but we think this of no consequence.

"Exception 23 to Article 1995 [Vernon's Ann. Civ. St.], in so far as applicable here, provides that actions against a corporation may be maintained in any county in which the cause of action or any part thereof arose. If it is shown that the contract was to be performed in Tarrant County, and it was breached in that county, it falls within this exception to

exclusive venue. [Citing cases.] The provision in the contract to the effect that any action thereon shall be filed in Dallas County is not available to defendant to defeat venue in this case. In a venue hearing, where a similar provision in the contract was reviewed, the Supreme Court held that such a provision is against public policy and would not be enforced. International Travelers' Association v. Branum, 109 Tex. 543, 212 S.W. 630.''

In Duque v. Duque, Cal. App., 317 Pac. (2d) 63, at page 64, the appellate court said: ''It would be against public policy to permit parties by private agreement to deprive a court of jurisdiction which is conferred upon it by statute. 12 Cal. Jur. (2d) page 295, section 95; 13 Cal. Jur. (2d) page 603, section 91.'' Compare Electrical Products Consolidated v. Goldstein, 97 Mont. 581, 36 Pac. (2d) 1033, and dissent in Electrical Products Consolidated v. Bodell 132 Mont. 243, 316 Pac. (2d) 788, at pages 791, 792.