FRANK McNUSSEN; WESLEY LEISHMAN; ERNEST LEE; F. A. LYNCH; CLARK A. GRIFFITH; ROBERT ROSELEIP, JR.; WILLIAM ELDRIDGE; CLIFFORD HENDRICKSON; CLARENCE ERICKSON; WALTER SCHROCK; ARNOLD ZERP; ALVIN PETERSON; AND GEORGE FRYBERGER, PLAINTIFFS AND RESPONDENTS, *v.* EUGENE W. GRAYBEAL AND PATRICIA R. GRAYBEAL, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF MISSOULA CREAMERY AND COLD STORAGE COMPANY, DEFENDANTS AND APPELLANTS.

No. 10420
Submitted September 11, 1962. Decided April 11, 1963.
380 P.2d 575.

Karl R. Karlberg (argued), Smith, Boone & Rimel, Missoula, for appellants.

Lloyd Wallace and J. A. Turnage, Polson, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by the defendants from an order denying defendants' motion for a change of venue from Lake County to Missoula County.

Plaintiffs are thirteen individuals, who on October 20, 1961, filed a complaint against defendants as individuals doing business as the Missoula Creamery and Cold Storage Company.

In the complaint, the plaintiffs seek a money judgment against the defendants for the alleged breach of a written contract for the sale and delivery of milk. The complaint contains two counts.

In their first count the plaintiffs alleged: That prior to September 6, 1961, plaintiffs were producers of milk in Lake County; that on September 6, 1961, at Lake County the plaintiffs and defendants entered into a written contract, here sued upon, wherein the plaintiffs agreed to sell to the defendants all milk produced by plaintiffs, and that the defendants agreed to purchase from the plaintiffs all the milk so produced by the plaintiffs "each day for a period of two (2) years beginning as of September 1, 1961, and ending on August 31, 1963, and agreed to pay the plaintiffs for such milk prices as follows:

" 'Starting September 1, 1961, to the end of the Missoula School Term 1962, prices for all milk will be $1.33 per pound

of butter fat. From the end of the Missoula School Term to August 31, 1962, the price per pound of butter fat will be $1.24. From September 1, 1962, until the end of the School Term 1963 the price paid per pound of butter fat will be $1.33. From the end of the Missoula School Term 1963 until August 31, 1963, the price per pound of butter fat will be $1.24.' "

In their first count, the plaintiffs further alleged: That the milk produced by them during the month of September 1961, contained daily 350 pounds of butter fat and will continue in the future to contain 350 pounds of butter fat each day; *that under the terms of their written contract plaintiffs sold and delivered to the defendants* all the milk produced by plaintiffs from September 1, 1961, to and including September 29, 1961, amounting to 10,150 pounds of butter fat, for which the defendants had contracted, promised and agreed to pay plaintiffs $1.33 per pound of butter fat, or $13,499.50; that of this amount the defendants paid to the plaintiffs the sum of $12,890.50, but that the balance due and unpaid in the sum of $609 has been demanded but that no part of such last-mentioned sum has been paid and that such sum is past due, owing and unpaid from the defendants to the plaintiffs.

In their second count, the plaintiffs alleged: That they have duly performed each and every provision of the written contract on their part to be performed, and that plaintiffs have been at all times and now are ready, willing and able to *sell and deliver to defendants* all the milk produced by plaintiffs daily as is provided in the contract, but that on September 30, 1961, the defendants refused to accept the same or any part thereof and that the defendants refused to pay the plaintiffs the price provided in said contract therefor.

In their second count, plaintiffs further alleged: That when the defendants failed and refused to accept plaintiffs' milk on September 30, 1961, and when defendants failed to pay plaintiffs the agreed price therefor that the plaintiffs then sought to sell their milk on the market and also to sell their milk to

574

another creamery but that plaintiffs were and have been unable to sell such milk for more than 80 cents per pound of butter fat, and that by reason of the foregoing facts, the plaintiffs lost and have been deprived of the gain and profits which might and otherwise would have accrued to plaintiffs and that plaintiffs' entire loss amounted to the sum of $122,325 in which amount plaintiffs have been damaged.

In the prayer to their complaint, the plaintiffs demand judgment against the defendants in the sum of $609 and interest thereon since September 30, 1961, on their first count and on their second count for the sum of $122,325, together with interest thereon at the legal rate, and for plaintiffs' costs and disbursements expended in the action.

On November 13, 1961, the defendants also filed in the tion by filing a general demurrer to the complaint and a demand that the place of trial of the action be changed from Lake to Missoula County, alleging that Lake County is not the proper county for the trial of this action and that Missoula County is the proper county for such trial.

On November 13, 1961, the defendants also fined in the action an affidavit made by the defendant, Eugene W. Graybeal, and a joint motion requesting that the District Court change the place of trial of the cause from the County of Lake to the County of Missoula, upon the grounds and for the reasons:

(1)    That the County of Lake is not the proper county for the trial of said action;

(2)    That it appears from plaintiffs' complaint and from the affidavit of the defendant, Eugene W. Graybeal, filed herein in support of defendants' motion for a change of the place of trial to Missoula County, that the defendants are residents of the County of Missoula, and that they were served with summons in Missoula County, and

(3)    That the alleged contract, upon which plaintiffs' ac-

tion is brought, had for its place of performance the County of Missoula.

The defendants concluded their motion for change of venue with the statement that such motion "is based upon the pleadings, records and minutes in the above-entitled action, and upon the affidavit of Eugene W. Graybeal, one of the defendants herein."

The affidavit of the defendant, Eugene W. Graybeal, filed in support of defendants' motion for change of venue reads as follows:

"Eugene W. Graybeal, being first duly sworn upon his oath, deposes and says: That he is now a resident of Missoula County, Montana, and an individual over the age of 21 years; that he is the husband of the defendant, Patricia R. Graybeal; that her residence is in the County of Missoula, State of Montana; that the defendants are the owners as co-partners of the Missoula Creamery and Cold Storage Company, and that the plant of the Missoula Creamery and Cold Storage Company and all of the assets thereof are located in Missoula County, Montana; that this affidavit is made for and on behalf of both of the defendants herein, and in support of their motion for change of venue.

"That the plaintiffs by their complaint seek a money judgment against the defendants, alleging the breach of a certain alleged contract entered into by the plaintiffs and the defendants relative to the sale of milk by the plaintiffs to the defendants. That the alleged contract between the plaintiffs and the defendants had for its place of performance, the County of Missoula, *in that all of the milk to be delivered under said alleged contract was to be delivered in the County of Missoula; that the said alleged contract specifically designates the County of Missoula as the place for the delivery* of the milk; *that no other place of performance is set forth in said alleged contract,* and that in truth and in fact all of the acts and performance of said alleged contract, were contemplated by said

alleged contract to be in the County of Missoula, and that any acts done by said defendants, pursuant to such alleged contract were done in the said County of Missoula. That the place and performance of said alleged contract was never expressly or by implication designated as any place other than the County of Missoula.

"That affiant has fully stated the defendants' case to Smith, Boone & Rimel, their attorneys, and that affiant is informed by said attorneys and verily believes, that the said defendants have a good and substantial defense to the above-entitled action upon its merits.

"Eugene W. Graybeal."

On November 22, 1961, the plaintiffs filed in the District Court for Lake County, in this action, their written objections to a change of the place of trial of the action from Lake County to Missoula County upon these claimed grounds and reasons, viz.:

(1)   That Lake County is the proper County for the place of trial of the action;

(2)   That the contract mentioned and described in plaintiffs' complaint was executed in Lake County;

(3)   *That said contract had for its place of performance the County of Lake;*

(4)   That the milk produced by the plaintiffs is produced in Lake County; and

(5)   That payment for the milk purchased by the defendants is made to the plaintiffs in Lake County.

The plaintiffs concluded their above objections to a change of place of trial from Lake County to Missoula County with the following paragraph, namely:

"These objections are made and based upon the pleadings, records and minutes of the Court and upon the attached Affidavits of the plaintiffs, Frank McNussen; Wesley Leishman; Ernest Lee; F. A. Lynch; Clark A. Griffith; Robert Roseleip,

Jr.; William Eldridge; Clifford Hendrickson; Clarence Erickson; Walter Schrock; Arnold Zerp; Alvin Peterson."

There were twelve separate supporting affidavits made and filed by plaintiffs. Each affidavit was made and executed separately and by a different plaintiff, but otherwise the affidavits are identical except for the name and the signature of the particular affiant making the affidavit. These affidavits were filed in the District Court for Lake County in support of plaintiffs' objections to the requested change of the place of trial from Lake County.

The affidavit of the plaintiff, Frank McNussen, reads as follows:

"Frank McNussen, being first duly sworn on his oath, deposes and says; that he is one of the plaintiffs named in the above-entitled action; that during all the times mentioned in the Complaint on file herein, he was, and for a long time prior thereto had been, and ever since has been and now is a resident of Lake County, Montana; that during all of said time he has been and now is a producer of milk in said Lake County, Montana; that on September 6, 1961, the defendant, Eugene W. Graybeal, came into Lake County, and, on said date, the contract set forth in the Complaint was signed and executed by the parties thereto in the said County of Lake; that the milk so produced by him and the other plaintiffs in this action *is all delivered to one hauler who hauls said milk to Missoula and delivers the same to the defendants;* that the same hauler hauls and transports milk for the defendants back from Missoula to the school in Arlee, Lake County, Montana; that the defendants mail their checks for the milk so sold to them by the plaintiffs to each of the plaintiffs and are delivered to these plaintiffs through the U. S. mails at St. Ignatius, Montana;

"That this affiant objects to a change of the place of trial of the above-entitled cause from Lake County to the County

of Missoula and makes this Affidavit in support of his opposition to such a change of place of trial.

"Frank McNussen"

Defendants' demand and their motion for a change of venue together with the above-quoted affidavit of the defendant, Eugene W. Graybeal, and the plaintiffs' objections to the granting of such demand and motion together with the above-mentioned dozen separate affidavits filed in the cause by the individual plaintiffs, were all submitted to the District Court which denied defendants' demand and motion for a change of venue from which order the defendants Graybeal have taken this appeal.

The issue presented is whether under section 93-2904, R.C.M. 1947, the trial court's order denying defendants' demand and motion for change of venue was erroneous.

Section 93-2904, R.C.M.1947, so far as concerns the problem here presented, provides:

"In all other cases the action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action, or where the plaintiff resides, and the defendants, or any of them, may be found; * * * Actions upon contracts may be tried in the county in which the contract was to be performed * * * subject, however, to the power of the court to change the place of trial as provided in this code."

It will be noted that section 93-2904 provides in the first sentence that the trial shall be in the county of defendants' residence. In the case of Hardenburgh v. Hardenburgh, 115 Mont. 469, 475, 146 P.2d 151, 153, this court in commenting upon this sentence, held:

"Section 9096, [now 93-2904, R.C.M.1947] excepting only the last sentence thereof, was originally taken from the Code of Civil Procedure of the state of California and the early decisions construing the statute held that the *right of the defendant* to have the action against him tried in the county of

his residence was absolute under the statute and that the court has no discretion in the matter. Watkins v. Degener, 63 Cal. 500; Williams v. Keller, 6 Nev. 141. As was said in Brown v. Happy Valley Fruit Growers, 206 Cal. 515, 521, 274 P. 977, 979: 'The right of a defendant to have an action brought against him * * * in the county in which he has his residence is an ancient and valuable right, which has always been safeguarded by statute and is supported by a long line of judicial decisions.' '' This same rule was followed in Fraser v. Clark, 128 Mont. 160, 273 P.2d 105.

■ Thus, the trial must be in the county of defendant's residence unless plaintiffs elect to bring the action in the county where the contract was to be performed. This choice is given defendant since the performance exception is permissive. -Love v. Mon-O-Co Oil Corp., 133 Mont. 56, 319 P.2d 1056.

In Love v. Mon-O-Co Oil Corp., supra, we affirmed the reasoning of the Hardenburgh case and declared the following rule:

''The law does not require that the parties to a contract agree upon a place for the performance of their contract, but it permits them to so agree. When, at the time of contracting, the parties have agreed upon a particular county wherein they mutually intended their contract was to be performed, such agreement will be respected and given effect, for it is a part of the freedom of contract to select the place where a contract shall be performed. In order to give full affect to the mutual intention of parties, the legislature has enacted, as a permissive exception to the general venue rule declared in the first sentence of section 93-2904 an additional provision, appearing in the second sentence of the section, designating the county wherein, at the time of contracting, the parties had agreed their contract was to be performed as a proper county for the trial of an action based thereon. This performance exception, however, applies only to such actions as are based upon contracts which plainly show, either (a) by their ex-

press terms, or (b) by necessary implication therefrom, that the contracting parties, at the time of contracting, did mutually agree upon a particular county, other than that of defendant's residence, wherein they intended that their contract was to be performed.''

When the affidavits in support of, and in opposition to, a motion for change of venue are wholly uncontradicted, the statements of fact contained therein must be taken as true. 56 Am.Jur., Venue, § 66, p. 67; Fraser v. Clark, supra; Johnson v. Clark, 131 Mont. 454, 311 P.2d 772. Defendants' affidavit sets forth that defendants are residents of and have their place of business in Missoula County. The fact is uncontradicted and must be taken as true. Thus, defendants had the valuable right to have the trial in Missoula County, unless the place of performance of the contract was Lake County. Defendants' affidavit has been previously set forth.

The complaint alleges:

"1. Plaintiffs sold and *delivered to the defendants* all the milk produced by them from September 1, 1961, to and including September 29, 1961 \* \* \*.''

''2. That plaintiffs \* \* \* have at all times and now are ready, willing and able to sell and deliver to the defendants all the milk \* \* \*.''

These facts stand undisputed and are conclusive that the place of performance contemplated by the parties at the time of contracting was Missoula County. If, there be considered any ambiguity, it would be resolved against the pleader. Johnson v. Clark, supra.

In plaintiffs' affidavits in opposition, it is set forth that they deliver milk produced by them to one hauler who hauls the milk to Missoula and delivers the same to the defendants. This substantiates and confirms the place of performance as Missoula County. It is noted in this connection that the affidavit carefully refrains from stating that the ''hauler'' is either a carrier, an agent, or employee of the defendants.

■ A re-reading of plaintiffs' affidavits concerning "delivery of milk to a single hauler for delivery to the defendants" indicates a studied effort to refrain from clearly asserting the place of performance, viz., delivery to Missoula County. Again, the rule of resolving ambiguities against the pleader or affiant as in Johnson v. Clark, supra, applies.

We should note also, the affidavits of plaintiffs concerning the receiving of checks in payment by mail in Lake County. On a sale of goods, it is incumbent upon the seller to deliver the goods to the buyer before any payment is due. The performance requires delivery, and as previously shown and quoted, delivery was specifically designated and understood to be in Missoula County. As stated in Hardenburgh v. Hardenburgh, supra, 115 Mont. at 477, 146 P.2d at 154, and quoting from 67 C.J.., Venue, it is said:

" '* * * To maintain suit in another county than that of defendant's residence plaintiff *must clearly show the facts relied on to bring the case within one of the exceptions to the rule and the contract must state so clearly that it is to be performed in another county than that of defendant's residence that no other fair construction can be placed upon it.* * * * Statutory provisions creating exceptions to the general rule recognizing a defendant's privilege to be sued in his own county will not be given a strained or doubtful construction. * * * Agreement must be clear. A mere direction by the seller as to the place of payment is not sufficient, nor can a promise to remit to cover the purchase price be sued upon by the seller in the county of the point to which the remittance is to be made.' "

■ As we have shown, the affidavit of defendant is uncontradicted, and in fact is supported by the complaint and affidavits of the plaintiffs. The proper county of venue is Missoula County.

The order appealed from is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and HON-

ORABLE L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE DOYLE, concur.

MR. JUSTICE JOHN CONWAY HARRISON dissenting.

MR. JUSTICE ADAIR dissenting:

I dissent and reserve the right to later file my written grounds and reasons for such dissent.