No. 86-400

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA, ex rel., MONTANA
CITIZENS FOR THE PRESERVATION OF
CITIZENS' RIGHTS, et al.,

        Plaintiffs and Relators,

        -vs-

JIM WALTERMIRE, Secretary of State,
et al.,

        Defendants and Respondents,

        and

MONTANA LIABILITY COALITION,

        Real Party in Interest.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relators:

    Goetz, Madden & Dunn; James H. Goetz argued, Bozeman,
    Montana

    For Respondents:

        Hon. Mike Greely, Attorney General, Helena, Montana
        James M. Scheier argued, Asst. Atty. General, Helena
        H. Elwood English argued, Secretary of State's Office,
        Helena, Montana
        Gary Pringle, Clerk & Recorder, Bozeman, Montana

    Real Party in Interest:

        Gerald J. Neely argued, Billings, Montana

    Amicus Curiae:

        Shelton D. Williams, Montana Assoc. Defense Counsel,
        Missoula, Montana

---

        Submitted: October 7, 1986
          Decided: OCT 22 1986

Filed OCT 22 1986

*Ethel M. Harrison*

Clerk

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 86-400

STATE OF MONTANA ex rel.
Montanans for the Preservation
of Citizens' Rights, the Montana
State AFL-CIO; the WOMEN'S LAW
CAUCUS; TYNDALL COX; GARY HENRICKS
and PAM McCLAIN, individually and
as next friend of her minor daughter,
FELICIA McCLAIN,

        Plaintiffs & Relators,

        vs.

JIM WALTERMIRE, Secretary of State
of the State of Montana; MIKE GREELY,
Attorney General of the State of Montana;
GARY PRINGLE, Election Administrator and
Clerk and Recorder of Gallatin County,
Montana, individually and as representative
of the Class of All Election Administrators
and the Clerk and Recorders of the State of
Montana; and the STATE OF MONTANA,

        Defendants & Respondents,

        and

MONTANA LIABILITY COALITION,

        Real Party in Interest.

DISSENTING OPINION

On October 7, 1986, in an original proceeding before this Court captioned as above, the majority of this Court, consisting of Chief Justice J. A. Turnage and Justices Fred J. Weber, John Conway Harrison and L. C. Gulbrandson handed down an Order denying the application for writ of injunction and other appropriate relief in its entirety.

The remainder of the Court, consisting of Justices John C. Sheehy, William E. Hunt, Sr. and the Hon. Joseph B. Gary, District Judge, sitting in place of Mr. Justice Frank B.

- 1 -

Morrison, Jr., dissented from the majority Order, stating they would grant the injunction. We file this Dissenting Opinion in accordance with § 3-2-204, MCA, in support of our Dissent to that Order.

In the Order, the majority recited that the application was denied "without prejudice to consideration of the issues in other proceedings." We do not know if this means that the majority will defer consideration of the issues as we discuss them in this Dissent. It is our position that the issues raised by the application and the opposition thereto must be tackled immediately and this Opinion will therefore entail a full discussion of the issues.

JURISDICTION AND STANDING

In this Dissent, we will refer to all of the plaintiffs as "relators." The real party in interest in this case is the Montana Liability Coalition, to which we will refer as the "Coalition." The remaining defendants and respondents are incidental parties brought before us because they are elected officials having to do with the conduct of elections in this state, including the coming general election on November 4, 1986.

Relator Montanans for the Preservation of Citizens' Rights is an ad hoc group of individual Montana citizens, voters and taxpayers formed for the purpose essentially of opposing proposed Constitutional Initiative No. 30, now set for the ballot on November 4, 1986, who claim they are individually, directly and adversely affected by the proposed Initiative. Relator Montana State AFL-CIO is a federation of labor organization workers who have rights and remedies protected by Art. II, § 16 of the Montana Constitution which may be impaired by Constitutional Initiative No. 30. Relator

- 2 -

Women's Law Caucus is a section of the Student Bar Association of the University of Montana, Law School, who contend that the preservation and enhancement of women's rights is involved in the Initiative and is adversely threatened thereby. Relator Tyndall Cox is a Montana citizen, voter and taxpayer who has sustained a Workers' Compensation injury, and who has a third-party action against a contractor who may be liable for all or part of the injuries he sustained and contends his cause of action is adversely threatened by the Initiative. Relator Gary Henricks is 31 years of age, a citizen, and a paraplegic from an accident for which he is presently maintaining an action against an automobile manufacturer. Henricks contends that he has a right to full compensation for his injuries which is directly and adversely affected by the proposed Initiative. Relator Pam McClain is a citizen, taxpayer, voter, the mother of a minor daughter who has sustained a severe and disabling brain injury. McClain is presently maintaining a court proceeding for damages and again she contends the proposed Initiative will adversely affect the claim.

Constitutional Initiative No. 30, set out more fully hereafter in this Dissenting Opinion, relators contend, and the dissenters agree, has serious constitutional defects which render the submission of the Initiative to the voters in the general election of November 4, 1986 impermissible.

Relators contend that unless enjoined by this Court, the election officials will submit to the electors in the general election of November 4, 1986 CI-30 as it is now constituted, and that the same will adversely affect their fundamental rights to pursue full redress for injury to property, person or character; that no other speedy or adequate remedy lies to

- 3 -

them at law or otherwise and that the following issues should be considered by this Court:

1. The statement of purpose of the Attorney General and the statements of implication contained in the Initiative are false and misleading.

2. The proposed Initiative invades the separation of powers doctrine by transferring judicial authority to the legislature.

3. The Initiative does not meet the constitutional requirement of presenting a single subject to the voters.

The Coalition responds:

1. That the issue of the sufficiency of the statements of the Attorney General is barred by § 13-27-316(2), MCA and by laches by the relators.

2. That the Initiative merely restores standards of judicial review recently enlarged by this Court as to the right of full redress.

3. That the separation of powers provision of the Montana Constitution authorizes the division of judicial powers under provisions of Art. III, § 1.

4. That the Initiative presents a single subject, though multi-faceted, to the electors.

The Coalition further responds that if this Court accepts jurisdiction on the sufficiency of the statements of the Attorney General, reasonable minds could differ on whether the statements are false, partial or prejudicial.

It is significant that in its response, while the Coalition denies our jurisdiction of the issue of the sufficiency of the Attorney General's statements, it does not contest this Court's jurisdiction immediately to hear and

- 4 -

decide the constitutional issues raised by the relators as to their claims of defects in CI-30.

It is clear, therefore, that the pleadings present justiciable issues which involve a statewide effect, and have deep constitutional implications. Unless this Court determines the issues, substantial deleterious harm may result. Accordingly, the parties have standing and this Court should accept immediate jurisdiction to determine the issues presented. Grossman v. State of Montana, et al. (Mont. 1984), 682 P.2d 1319, 41 St.Rep. 804. See § 3-2-205(2), MCA.

The effect of the majority Order to which we have dissented therefore is to decline to decide the substantive issues when all parties concede they should be decided by us. The refusal of the majority in this case to decide such issues is one of the reasons we have dissented.

WHETHER THE ISSUE OF THE SUFFICIENCY OF THE ATTORNEY
GENERAL'S STATEMENTS IS BARRED

The 1972 Montana Constitution provides that the people may propose constitutional amendments by initiative. Art. XIV, § 9. When a petition containing a sufficient number of signatures has been filed with the Secretary of State within the time required by the constitution or by law, it is the duty of the Secretary of State to certify immediately to the Governor that the completed petition has been officially filed. Section 13-27-308, MCA. In this case, the Attorney General certified the CI-30 to the Governor on July 30, 1986. It is the duty of the Secretary of State to transmit a copy of the ballot form to the Attorney General on the same day the completed petition is certified to the Governor. Section 13-27-310, MCA. It is the duty of the Attorney General,

- 5 -

through procedure set up in § 13-27-312, MCA, to provide for the ballot a statement of purpose, and statements of the implications of a vote for and against the measure. The statement of purpose and the statements of implication must express a true and impartial explanation of the proposed ballot issue in plain easily-understood language and may not be argumentative or written so as to create prejudice for or against the measure. Section 13-27-313(4), MCA. Persons who oppose the Initiative and do not believe that the statements of purpose and of implication satisfy the requirements of law may within ten days of the date of certification to the Governor petition the District Court in Lewis and Clark County for relief.

Relators did not proceed in the District Court, but instead filed an original action in this Court on August 28, 1986. In the meantime, the Secretary of State had certified the ballot to the county election administrators on August 20, 1986, and had awarded the printing contract for the voter information packet on August 21, 1986.

The Coalition contends that the Relators are barred in this Court because they did not first seek relief in the District Court. Yet the statute upon which the Coalition relies for opponents' action to commence in the District Court is at most permissive. Section 13-27-316(2), provides:

> If the opponents of a ballot measure believe that the statement of purpose, the statements of implication of a vote, or the fiscal statement formulated by the Attorney General pursuant to 13-27-312 do not satisfy the requirements of 13-27-312, they may, within 10 days of the date of certification to the Governor that the completed petition has been officially filed, file an action in the District Court for the County of Lewis and Clark challenging the adequacy of the statement and requests to the court to alter the statement.

- 6 -

It is important to note that § 13-27-316 is not an imperative statute. The word "may" must be interpreted as permissive only. This Court has had a bitter prior experience with interpreting the word "may" as "must," which it did in State ex rel. Interstate Lumber Company v. District Court (1918), 54 Mont. 602, 172 P. 1030. The holding was repudiated in Hardenburgh v. Hardenburgh (1944), 115 Mont. 469, 146 P.2d 151 and in Johnson v. Ogle (1945), 117 Mont. 419, 159 P.2d 337. Following up on these cases, this Court in Love v. Mon-O-Co Oil Corporation (1958), 133 Mont. 56, 319 P.2d 1056, again decided that the word "may" should not be given the force of "must." Our last expression on the subject occurred in Clark Fork Paving, Inc. v. Atlas Concrete and Paving (1978), 178 Mont. 8, 582 P.2d 799, 781, where we said that the word "may" as an exception to the statute [a venue statute] "needs to be read as a permissive word, and not as the imperative must."

The reason given by the majority for the order denying relief, as that reason was expressed to us in this case, is that had the relators brought their action in the District Court, and there raised the sufficiency of the statement of purpose and the statements of implication, the District Court could have cured the same in the manner provided § 13-27-316, MCA. Since § 13-27-316, is purely permissive, however, the majority, in denying relief, must be relying on laches, the other ground raised by the Coalition in its opposition to consideration of the sufficiency of the statements of purpose and implications.

Laches is really a species of equitable estoppel. Generally it applies when the inaction of one party results in prejudice to another party or induces another party to

- 7 -

change his position to his prejudice. Even though it may be argued that the Coalition has been prejudiced because the statement could have been altered in the District Court, that argument cannot apply to this case. The ten days provided in the permissive statute would be insufficient in this case to formulate the issues that relate to the statements here involved. Further it would be impossible, as the Coalition has argued before us, for the District Court to compose a statement of 100 words which would adequately advise the voter of the issues involved in CI-30. Moreover, there are parties interested, not represented here, whose rights are involved, the thousands of Montana residents whose fundamental rights to full redress before the courts are jeopardized by the Initiative.

This Court has at least a minimum duty to make certain in a proper case, when this Court has the power to act, that when voters exercise their ballot right to determine a constitutional initiative, they are adequately informed of the purpose of the initiative in a true and impartial manner. The majority here by their Order denying relief place greater stock in compliance with a permissive statute than in making certain that initiative issues are truly and impartially stated.

There is a further and very compelling reason why this Court should not hesitate now to examine the sufficiency of the statements in CI-30. That reason is that under the statutory scheme for initiatives, the opportunity of opponents to object to statements approved by the Attorney General comes far too late in the game. Before a petition for initiative action is ever circulated for signatures, its form must first be submitted to the Legislative Council, to

the Secretary of State, and to the Attorney General. Section 37-27-202, MCA. These officials must review the form of the petition, including the statement of purpose and the statements of implication and approve or reject the form of the petition before signatures are solicited. There is no statutory provision then for an objector to the Initiative to object to the statements before signatures are procured although the proponents of the measure are given the right then to go to court if they do not agree with the approved form of the petition. Section 13-27-316(1), MCA. Thus in this case, the petition itself as it was circulated for signatures, contained a statement of purpose and statements of implication approved by the Secretary of State and the Attorney General, which as we shall demonstrate were false. Who can say that the signatures would have been obtained if the signers knew in truth what the form of the Initiative masked? There are no equitable grounds for the application of laches against the relators here under the facts of this case. If the District Court or this Court were to revise the statement of purpose to its true intent, and we permitted a vote on a revised form in this case, the issue on the ballot would be substantially different from the issue petitioned for by those signing the petition.

The final point, which we hope will be raised some day in a proper case, is that the adoption of § 13-27-316, MCA, by the Legislature is in excess of its legislative power. It is a rule of procedure and rules of procedure are the business of this Court subject only to disapproval by the Legislature. Art. VII, § 2(3), 1972 Montana Constitution.

The last contention on which laches might be based is the argument of the elected officials that the ballots have

been printed and sent out, and that it would be expensive now to change them. Such an argument is balderdash. We have interrupted the ballot process at as close or closer intervals. See for example State ex rel. Harper v. Waltermire (Mont. 1984), 691 P.2d 826, 41 St.Rep. 2212.

THE FALSITY OF THE BALLOT ISSUE

The basic premise of CI-30, is as follows. As the issue will appear on the ballot, the voters will be given the impression that by their affirmative vote, the Legislature for the first time will have the right to determine the rights and remedies for injury or damage to person, property or character. That premise is baldly false. As long as we have been a state, the Legislature has had that power.

We set out for the reader the full text of CI-30, as it will appear on the ballot:

[ ] FOR amending the Montana Constitution to authorize the Legislature to determine the rights and remedies for injury or damage to person, property, or character.

[ ] AGAINST amending the Montana Constitution to authorize the Legislature to determine the rights and remedies for injury or damage to person, property, or character.

The language of the Attorney General's "Statement of Purpose" will not appear on the ballot, nor will there appear the text of the Initiative as it is proposed. If the voter desires to examine the Attorney General's explanatory statement, he/she must look to the "1986 Voter Information Pamphlet" promulgated by the Secretary of State. For the benefit of the reader, we set forth in full the Attorney General's explanatory statement of purpose:

This initiative would amend the Montana Constitution to authorize the Legislature to determine the rights and remedies for injury or damage to person, property, or character. Currently the Constitution does not permit limits

- 10 -

on these rights and remedies. A two-thirds vote of each house of the Legislature would be required to set dollar limits on damages for economic loss resulting from bodily injury.

Further, if the voter desires to acquaint himself/herself with the full text of the Initiative to determine what it says, he/she will have to find it on a separate page of the 1986 Voter Information Pamphlet.

Only in those counties, if any, not having an abbreviated form of ballot (§ 13-27-501, MCA) will the Attorney General's explanatory statement and the statements of implication upon which the vote is taken appear in juxtaposition to each other.

For the benefit of the reader, the full text of the Initiative, as it appeared on the signed petitions, is here set forth:

BE IT ENACTED BY THE STATE OF MONTANA:

Section 1. Article II, section 16, of the Constitution of the State of Montana is amended to read:

"Section 16. The administration of justice. (1) Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. Right and justice shall be administered without sale, denial, or delay.

(2) No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay.

(3) This section shall not be construed as a limitation upon the authority of the legislature to enact statutes establishing, limiting, modifying, or abolishing remedies, claims for relief, damages, or allocations of responsibility for damages in any civil proceeding; except that any express dollar limits on compensatory damages for actual economic loss for bodily injury must be approved by a 2/3 vote of each house of the legislature.

Section 2. Effective Date. This amendment is effective on approval of the electorate."

[NOTE: Words struck out indicate words to be deleted by the Initiative. Underlining indicates new material.]

The so-called "Statement of Purpose" of the Initiative that was approved by the Attorney General and the Secretary of State and probably by Legislative Council, before the petitions for signatures were circulated, appeared on all the petitions that were signed. It will not appear on the ballot itself. The statement is palpably false.

The Statement of Purpose starts out by telling the voter that the Initiative "would amend" the Montana Constitution "to authorize the Legislature to determine the rights and remedies for injury and damage to person, property or character." As we will demonstrate below, the Legislature has always had that authority. The next sentence of the Statement of Purpose, however, is particularly misleading and deceitful. It states, "Currently the Constitution does not permit limits on these rights and remedies." There is no legal or statutory basis for that statement.

Art. V, § 1, 1972 Montana Constitution provides, "The Legislative power is vested in a legislature . . . " The 1889 Montana Constitution carried the same language. Art. V, § 1. In State ex rel. DuFresne v. Leslie (1935), 100 Mont. 449, 50 P.2d 959, we said:

. . .

> The sovereign power of the state rests with the people. The legislative assembly, as the authorized representative of the people, exercises this sovereign power.
>
> . . . It is very clear that, except for limitations placed upon the power of the Legislature, first, by the Constitution of the United States and, second, by the Constitution of the State, the will of the

> legislative body may be freely exercised in all legislative matters unrestricted.

100 Mont. 452-453, 50 P.2d 961.

Similar language regarding the plenary power of the Legislature will be found in Mills v. Stewart (1926), 76 Mont. 429, 247 P. 332; State ex rel. Evans v. Stewart (1916), 53 Mont. 18, 161 P. 309; State v. Camp Sing (1896), 18 Mont. 128, 44 P. 516.

In Shea v. North Butte Mining Company (1919), 55 Mont. 522, 179 P. 499 (amazingly relied on by the Coalition), this Court defended the right of the Legislature to establish a Workers' Compensation Act which took away from injured workers covered by the Act the right to go to court against their employer. We held that no Constitutional guarantee was impinged by the abolition through the Legislature of the injured parties' common law rights against the employer and the substitution of a Workers' Compensation Act.

Thus it has always been recognized that the Legislature has full authority "to determine the rights and remedies for injury or damage to person, property or character" although the ballot issue under CI-30 would imply that it has no such power.

Nor has the Legislature been reticent in using its power to limit rights and liabilities. It has provided measures of damages in all civil actions (Title 27, Part 3, MCA); provided for the survival of causes of action in cases of death, (§ 27-1-501, MCA); accorded minors the right to bring a civil action, (§ 27-1-511, MCA); accorded immunity from suit for legislative acts and omissions, (§ 2-9-111, MCA); and this Court has upheld restrictive access to the courts

under the Montana Medical Legal Panel Act (Title 27, Chapter 6, MCA). There are hundreds of other examples.

Plainly, the Legislature is fully authorized to determine the rights and remedies for injury or damage to person, property or character, and that authority has been fully backed by this Court. The bald assertion otherwise contained in the Statement of Purpose in CI-30 is pointedly and palpably false.

In the same light, the issue as presented to the voters on the ballot in the Statements of Implication is equally deceitful. Thus the voter is told:

[ ] FOR amending the Montana Constitution to authorize the Legislature to determine the rights and remedies for injury or damage to person, property, or character.

[ ] AGAINST amending the Montana Constitution to authorize the Legislature to determine the rights and remedies for injury or damage to person, property, or character.

No more slick or cunning masking of the true intent of CI-30 could be devised than what is presented to the voter here to vote "FOR" or "AGAINST." What voter would not be "for" giving the Legislature such authority? What kind of voter would be "against" giving the Legislature such authority? The designers of the Initiative have cleverly disguised the derogatory effect of the Amendment by masking the Statements of Implication in seemingly innocent words and phrases. The Statements of Implication are fakery of the worst kind.

FALSITY BY SILENCE

False as the Statement of Purpose and the Statements of Implication are in what they expressly state, they are equally false in what they omit to tell the voter or the petition signer about the effect of the Initiative.

- 14 -

The statements do not tell the voter that passage of the Initiative will take away every person's right to a speedy remedy for _every_ injury of person, property, or character. The word "every" is deleted in the Initiative's § 16(1). The word "every" in that context has been a part of our State's Constitution since 1889. See Art. III, § 6, 1889 Montana Constitution.

The statements do not tell the voter that their right of redress for injury will no longer be a _full_ right. The words "this full" describing legal redress were deleted in § 16(2) of the Initiative.

Perhaps worst of all, the statements do not tell the voter that all judicial power to review and construe the validity of actions taken by the Legislature under the Initiative is taken away. The Legislature will become the sole judge of the legality of its actions under the Initiative. It should be clear that such a drastic transference of the judicial power from the courts to the Legislature should be a subject of advice to the voter in the Statement of Purpose and in the Statements of Implication, and not hidden away in the arcane provisions of the Initiative.

Finally, the statements do not advise the voter that the authority given the Legislature if the Initiative passes is not merely limited to "tort reform." _Every_ right to remedy, of _every_ kind and nature, will be locked away from judicial review whenever the Legislature acts under the Initiative.

It was the purpose of the constitutional delegates in constructing the 1972 Montana Constitution to open up the initiative process for the people. They provided in Art. III, § 4 that the people may enact laws by initiative. They

further provided in Art. XIV, § 9, that the Constitution itself can be amended by initiative. With respect to initiatives which propose to enact laws, the State Constitution provides that the sufficiency of the initiative petition shall not be questioned after the election is held. Art. III, § 4(3). No such provision appears with respect to initiatives which would amend the Constitution. It may be fortunate for the people of this state that the sufficiency of the petitions for this Constitutional Initiative may be questioned after the election. Otherwise the high purpose of the constitutional delegates to preserve in the people the power to define their constitutional rights could be subverted by petitions circulated with dubious purposes and masked intentions.

In fleshing out the initiative rights provided by the new Constitution, the Legislature sought to prevent what is happening here with CI-30. It provided in § 13-27-312(4), MCA, that:

> The Statement of Purpose and the Statements of Implication must express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or written so it could create a prejudice for or against the measure.

The Statement of Purpose and the Statements of Implication, as they appeared on the petitions, and as they now will appear on the ballot are not true; they are not impartial; they are argumentative, and written so as to create a prejudice for the measure.

Before the Order of the majority of this Court in this case, we have not hesitated to exercise our power to protect the people in ballot issues. In Sawyer Stores, Inc. v. Mitchell, et al. (1936), 103 Mont. 148, 62 P.2d 342, this

Court set out language which is applicable today to statements of implication:

> "Description" in these circumstances signifies a fair portrayal of the chief features of the proposed law in words of plain meaning so that it could be understood by the persons entitled to vote. It must be plain enough to convey an intangible idea of the scope and import of the proposed law. It ought not to be clouded by undue detail, nor yet so abbreviated as not to be readily comprehensible. It ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy; it must contain no partisan coloring. It must in every particular be fair to the voter to the end that intelligent enlightened judgment may be exercised by the ordinary person in deciding how to mark the ballot.

If this Court applied the rule of Sawyer to the Statement of Purpose and the Statements of Implication in this case, they could not stand.

In Sawyer, we pinpointed the dilemma of the uninformed voter facing such a ballot issue:

> The majority of qualified electors are so much interested in managing their own affairs that they have no time to carefully consider measures affecting the general public. A great number of voters undoubtedly have a superficial knowledge of proposed laws to be voted upon, which is derived from newspaper comments or from conversations with their associates. We think the assertion may be safely ventured that it is only the few persons who earnestly favor or zealously oppose the passage of a proposed law, initiated by petition, who have attentively studied its contents and know how it will probably effect their private interests. The greater number of voters do not possess this information and usually derive their knowledge of the contents of a proposed law from an inspection of the title thereof, which is sometimes secured only from the very meager details afforded by a ballot which is examined in an election booth preparatory to exercising the right of suffrage.

If the foregoing quotation be true (as we think it is) all the more reasons exists for a compliance with the provisions of our statutes in relation to the descriptive manner which is required to be placed on the ballot by which a proposed measure is submitted.

- 17 -

It was the evident thought of the Legislature, in enacting § 13-27-202, MCA, requiring the submission of a sample of the proposed measure and of Statements of Purpose and Statements of Implication to the Legislative Council, the Secretary of State, and the Attorney General before petitions are circulated, that such officials would protect the people from misleading and deceitful submissions by initiative. In defense of the public officials in this case, it should be recognized that the presentation of a sample petition by the proponents is made ex parte, and, as we noted in Sawyer, it is only the few persons who earnestly favor or zealously oppose the passage of a proposed law initiated by petition who attentively study its contents and know how it probably will affect their interests. Whatever the cause, and however they slipped through, the statements here do not measure up to the requirements of truth and impartiality in § 13-27-312(4), MCA.

Faced with the same situation in Sawyer, supra, this Court had no patience with the contention that laches prevented action to remove the ballot from the election. This Court said:

> Defendants contend that plaintiff is estopped to process this action by reason of laches. For present purposes, we will consider as true each of the allegations of defendants' answer in relation to this phase of the matter. Conceding that plaintiff did not act herein as expeditiously as it might have done, yet we are of the opinion that the action should not be dismissed because of such failure on the part of the plaintiff. If this proceeding affected merely the private rights of the plaintiff, then doubtless the plea of laches would be good. This Court has jurisdiction, as noted above, because of the public interest which attaches here. We are of the opinion that the liberties of the people of this State should not be jeopardized merely because the plaintiff has not acted with the greatest degree of celerity; and therefore such plea is not sustained.

- 18 -

103 Mont. 181, 62 P.2d 357.

## THE INITIATIVE IS IMPERMISSIBLY MULTIFARIOUS

Art. XIV, § 11, 1972 Montana Constitution provides that "if more than one amendment [to the Constitution] is submitted at the same election, each shall be so prepared and distinguished that it can be voted upon separately." The section applies to ballot measures proposed by the electorate through the initiative process as well as through those proposed by legislative enactment. State ex rel. Steen v. Murray (1964), 144 Mont. 61, 394 P.2d 761.

CI-30 combines six disparate amendments to the Constitution. In addition, the amendatory effects of CI-30 are not contained in either the Statement of Purpose or the Statements of Implication.

1. By deleting the word "every" in the first sentence of Art. II, § 16, CI-30 removes the constitutional protection for a speedy trial and right of redress from any injury to person, property or character.

2. By removing the words "this full" from § 16(2), the Initiative removes from constitutional protection the right of persons to a complete remedy in the courts for the redress of wrongs.

3. By removing the words "every," and the words "this full" from § 16, the Initiative removes rights and remedies, under equal protection standards, from strict scrutiny by the courts.

4. By removing the words "every" and "this full" from § 16, the Initiative, in § 16(3), eliminates the power of any state court from construing § 16 in a manner which would limit the power of the Legislature from adopting any mode or right of remedy it might seek to provide.

5. Section 16(3), under the Initiative vests in the legislative branch the sole authority as to the extent of individual rights and remedies, excluding the right of access to the courts.

6. CI-30 adds to existing Art. II, § 16, of the Constitution a limitation on the authority of the Legislature to place dollar limits on compensatory damages by requiring the approval of such enactments by a two-thirds vote of each house of the Legislature.

The multifariousness of the Initiative is easy to demonstrate. A voter might wish to preserve the right of access to the courts for every wrong, but to authorize the Legislature to limit the remedies so as not to give "full redress; or the voter might agree to remove the words "every" and "full" from § 16, but to preserve the rights of the courts to examine the validity of legislative adoptions under § 16. A voter might favor a two-thirds vote of each house of the Legislature for limits on compensatory damages, but not the removal of the right of speedy access for every injury, or for full redress.

By combining all these subjects in a single initiative, the will of the voter is defeated. We condemned such proposals in Sawyer Stores, Inc. v. Mitchell (1936), 103 Mont. 148, 62 P.2d 342 stating:

> . . . a submission is void where two propositions have been submitted so as to have one expression of the voter answer both propositions, and this for the reason that voters might thereby be induced to vote for both propositions who would not have done so if the question had been submitted singly. As the voter in this instance might have been against the adoption of the initiated bill, but desirous of locating the capital in event the bill carried, the question should have been separately submitted to him that he might so express his will. This was the effect of the holding the court in Lozier v. Alexander Drug Company, supra, where the Court

- 20 -

said: No opportunity was given the elector separately to express his will by his vote upon the question of the adoption or rejection of said provision as proposed . . ."

103 Mont. 173, 62 P.2d 354.

THE TRUE PURPOSE OF THE INITIATIVE

In White v. State of Montana (Mont. 1983), 661 P.2d 272, 40 St.Rep. 507, 509, 510, this Court held that the language of present Art. II, § 16 guaranties everyone "a fundamental right" to bring a civil action in a court of law.

In Pfost v. State (Mont. 1985), 713 P.2d 495, 42 St.Rep. 1957, 1966, we held that the words "full legal redress" in Art. II, § 16, protected as a "fundamental right, the right of persons to be fully compensated for every injury." This holding necessitated the application of the "strict scrutiny" test when legislative enactments are examined in the light of equal protection standards.

The purpose of CI-30 is to remove the status of fundamental right in actions for every injury of person, property or character, and the equally fundamental right to full redress for such injury. The further objective of the Initiative is to remove any such enactments of the Legislature under the proposed Art. II, § 16, from judicial review.

The true purpose of the Initiative, is as we said, masked from the voter.

In advertising, and in statements to the press, the proponents of CI-30 are advancing its cause under the banner of "tort reform." A voter might well wish for "tort reform," and yet not realize that the proposed amendment would authorize the Legislature to abolish, limit or modify every possible right of recovery or remedy without judicial review

under the new § 16. If adopted, CI-30 will apply not only to remedies for tort, but to contract remedies, specific performance, or any other right or remedy that the reader might name.

In exchange for a short term liability insurance crisis, Initiative 30 will substitute a long-term submission to the unbridled will of the Legislature. Any student of the long-time history of the Montana Legislature will recognize the folly of that direction.

THE MAJORITY MAY BE BOXED FROM FURTHER CONSIDERATION OF
INITIATIVE 30'S DEFECTS

In another case before this Court concerning a constitutional initiative to be submitted to the voters at the general election of November 4, 1986, (State of Montana ex rel. Montana School Board Association, et al. v. Jim Waltermire and Friends of the Constitution, Inc., Cause No. 86-411, decided October 7, 1986) two of the Justices here dissenting authorized the submission of CI-27 to the voters although they recognized possible constitutional defects in the Initiative. District Judge Gary did not participate in that decision.

CI-27 presented a different aspect from that presented by CI-30. CI-27 provided that its effective date would be July 1, 1987. Thus there is time, if that Initiative passes, for action to be taken to remedy the defects if such defects do exist. In this case, however, involving CI-30, § 2 of the Initiative provides that the effective date shall be immediately on the approval of the electorate. Thus if the voters approve, CI-30 will take effect on November 4, 1986, and be effective from that date.

By voting to allow CI-30 to go to the voters, the majority in this case may have effectively prevented themselves from further consideration of the constitutional issues therein involved. If the provisions of CI-30 become a part of the Constitution, how can it later be said that they are unconstitutional?

As we indicated earlier in this Dissent, the question of the sufficiency of the petitions on which constitutional CI-30 is based is still open to question. If that be the reason that the majority permitted CI-30 to go to the voters, with the thought that such sufficiency could be later questioned, well and good. Such purpose, however, was not expressed to the dissenters before the entry of the majority Order.

By making CI-30 effective immediately upon its approval by the electorate, a serious roadblock exists to any further examination of the provisions of CI-30 if it is successful, and its constitutionality is questioned. In the opinion of the dissenters, the delay of the relators (it was a minimal delay) in getting the issues to this Court is not a sufficient reason for this Court not to exercise its right and prerogative, and indeed, its duty, to protect the electors of this State from false and misleading manipulations of the initiative process.

We affirm our Dissent to the majority Order in this cause of October 7, 1986.

_John B. Sheehy_
Justice

We Concur:

- 23 -

_____
Justice

_____
District Judge
Joseph B. Gary sitting for
Justice Frank B. Morrison