No.    92-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

BRETT DEPEE, JANET DEPEE, and
BITTERROOT VALLEY BANK,

        Plaintiffs and Respondents,

-v-

FIRST CITIZEN'S BANK OF BUTTE,

        Defendant and Appellant.

FILED

1 1 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
                 In and for the County of Ravalli,
                 The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                J. Richard Orizotti, Poore, Roth & Robinson,
                Butte, Montana

        For Respondent:

                Dan G. Cederberg, Missoula, Montana;
                Judith A. Loring, Stevensville, Montana

                Submitted on Briefs:  February 25, 1993

                        Decided:  May 11, 1993

Filed:

_____
               Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from the Twenty-First (formerly Fourth) Judicial District Court, Ravalli County, denying defendant's motion for change of venue. We affirm.

We consider the following issue on appeal:

Did the District Court err in denying defendant's motion for change of venue from Ravalli County to Butte-Silver Bow County?

Brett and Janet Depee (Depees) are residents of Stevensville in Ravalli County. In October of 1990, the Depees entered into an agreement with Better Homes of Montana (Better Homes) to purchase a 1983 Venture mobile home. The contract called for Better Homes to deliver, set up, block and level the mobile home at the Depees' residence in Stevensville.

The contract for sale of the mobile home was conditioned on the approval of financing by Bitterroot Valley Bank (Bitterroot Bank). Bitterroot Bank is located in Lolo, Missoula County. First Citizen's Bank of Butte (First Bank) held a lien upon the mobile home in question. Upon agreement with Depees, Bitterroot Bank Vice President Rich Zins (Zins) contacted First Bank and asked if the First Bank would release its lien and, if so, where payment for the mobile home should be delivered. First Bank stated that the check from Bitterroot Bank should go directly to Better Homes and that the lien would be released in the normal course of business. Bitterroot Bank contends that it would not have loaned the money to the Depees unless the Bank had agreed to release the lien.

2

On or about October 19, 1990, Bitterroot Bank sent Better Homes a check for the purchase price of the mobile home. The mobile home was subsequently delivered to the Depees and they moved into it in November of 1990. Subsequently, Better Homes went out of business. Following the mobile home's delivery, First Bank attempted to have title issued to the mobile home based upon repossession. An affidavit of repossession was issued on June 4, 1991, stating that First Bank had actual possession of the mobile home. According to First Bank, Better Homes had been required to deliver a negotiable certificate of title on the mobile home to First Bank. When Better Homes paid the debt owed on the mobile home, First Bank would release the certificate of title.

Depees and Bitterroot Bank subsequently filed suit against First Bank regarding the encumbered title to the mobile home. The suit was filed in Ravalli County and contains charges of wrongful conversion, breach of agreement, breach of statutory duty to file a satisfaction of a chattel mortgage, wrongful repossession of the mobile home, breach of an obligation of good faith and fraud.

The Bank then filed a motion for change of venue to Butte-Silver Bow County where it maintains its principal place of business. A hearing was held on May 20, 1992, and on July 20, 1992, the court issued an order denying the Bank's request for change of venue.

Did the District Court err in denying defendant's motion for change of venue from Ravalli County to Butte-Silver Bow County?

3

First Bank argues that the general rule of law governing venue is that venue is proper in the county where the defendant resides. According to First Bank, none of the statutory exceptions to this general rule apply under the facts of this case: the tort claims and contract claims are not appropriate in Ravalli County. First Bank contends that the action is only proper in Butte-Silver Bow County, where First Bank has its principal place of business.

The Depees argue that if Ravalli County is a proper county, the court cannot change venue to another proper county. According to the Depees, Ravalli County is appropriate because the underlying contract was to be performed in Ravalli County. Further, all torts alleged by the Depees spring from this contract and are so interrelated with it that Ravalli County is appropriate.

The record on appeal of venue is limited and contains only the complaint, an affidavit and the transcript of the venue hearing. The action revolves around two agreements, one of which is a written purchase agreement made between the Depees and Better Homes. The purchase agreement for the mobile home had a condition precedent. A condition precedent is a condition which must be met before the agreement becomes effective. Westmont Tractor Co. v. Viking Exploration, Inc. (D.C. Mont. 1982), 543 F.Supp. 1314. The purchase agreement states expressly that the sale is conditioned on the approval of financing by Bitterroot Valley Bank.

A second agreement exists within the facts of this case and that is the oral agreement between First Bank and Bitterroot Bank. In that agreement, First Bank agreed to release its lien on the

4

Depees mobile home, which had been floor financed to Better Homes, when Better Homes paid the amount owed on the home. First Bank agreed in a telephone conversation that the lien would be released so that Bitterroot Bank could maintain the security interest on the mobile home. Bitterroot Bank officer, Zins, testified that he would not have loaned the $12,500 to the Depees unless First Bank agreed to release its lien.

Montana's venue statute governing contract actions is § 25-2-121, MCA. This section of the code provides that venue for contract actions is proper in either the county in which the defendant resides or the county in which the contract is to be performed. Section 25-2-121(1), MCA. See also, Missouri-Stone v. Barber Seed (Mont. 1992), 49 St. Rep. 1139. According to this statute, the county where the contract is to be performed, if no place is named, is the county in which, by necessary implication from the terms of the contract, considering all of the obligations of all parties at the time of its execution, the principal activity was to take place. Section 25-2-121(1)(b)(ii), MCA. [Emphasis added.] The particular county must be clear from the express terms of the contract or by necessary implication from the contract terms. Berlin v. Boedecker (1989), 235 Mont. 443, 767 Mont. 349.

The first contract, the purchase agreement, does not specify where the goods are to be delivered. It states that the mobile home is to be delivered, set up, blocked and leveled by Better Homes personnel. The purchase agreement lists the Depees' address in Ravalli County. By "necessary implication" the county of

5

principal activity is where the mobile home was to be set up, and in fact was set up.

The second agreement between First Bank and Bitterroot Bank would have Ravalli County as its place of principal activity also. Although First Bank officer Beck testified that had First Bank been paid for the mobile home, it would have released the title to the dealer, Better Homes, that title would have eventually been sent to Bitterroot Bank. That is particularly so since Better Homes went out of business shortly after the Depees bought the mobile home.

In addition, subsection (2)(a) of § 25-2-121, MCA, lists specifically that the proper county for contracts for the sale of property or goods is to be where the goods are to be delivered. The "goods" under the purchase contract were delivered, set up, blocked and leveled in Ravalli County. Ravalli County was obviously the county where the principal activity of both contracts, and the place where the "goods" from the first contract were delivered.

First Bank claims that it was not a party to the purchase agreement. Such argument is irrelevant. First Bank was a party to the second agreement and the principal place of activity on that agreement would have been Ravalli County.

The Depees do not have a cause of action outside of the purchase agreement. Every claim, every activity at issue by all four parties, stems from this purchase agreement. Even the tort claims, which the Bank argues were not founded in this initial contract, are directly tied to the initial purchase agreement or

6

the agreement between First Bank and Bitterroot Bank. Our statutes provide that where tort claims are so interrelated with the contract action, the site of venue which is appropriate for the contract action is appropriate for the tort claims also. Section 25-2-122, MCA.

We conclude that under both contracts at issue in this case, Ravalli County is proper venue. Therefore, a change of venue is not proper under Montana's venue statutes because the plaintiffs filed in a proper county. We hold that the District Court did not err in concluding that Ravalli County was a proper county for venue and in denying the Bank's motion for change of venue.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

7

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Defendant was entitled to be sued in the county of its residence unless it was a party to a contract to be performed in some other county. In reasoning which adds a new twist to the rules of venue, the majority holds that since some other contract to which defendant was not a party was to be performed in Ravalli County, defendant is somehow subject to suit in Ravalli County.

Plaintiffs filed a complaint against defendant in Ravalli County alleging six causes of action. Count No. 2 was the only cause of action based on contract. It alleged that:

### XXVI.

First Citizen's, through its agent Beck agreed to release its lien against the mobile home and allow title to the mobile home to be transferred to Depees free and clear of its lien on payment of Twelve Thousand Five Hundred and No/100 Dollars ($12,500.00) to Better Homes plus allowance for a trade-in and down payment.

### XXVII.

First Citizen's breached its agreement to release its lien against the mobile home by failing to release its lien after payment in full was received.

There was no written agreement which formed the basis for plaintiffs' complaint, and according to the allegations of the complaint, there was no place of performance specified in the alleged oral agreement. In *Berlin v. Boedecker* (1989), 235 Mont. 443, 444-45, 767 P.2d 349, 350, we held under similar circumstances that:

"The general rule governing venue of any civil action is that the action shall be tried in the county in which the

8

defendant resides." *Whalen v. Snell* (1983), 205 Mont. 299, 301, 667 P.2d 436, 437; see also § 25-2-118(1), MCA. A plaintiff also may choose to bring a contract action in the county where a contract *was to be performed*. Section 25-2-121(1)(b), MCA; *Hardenburgh v. Hardenburgh* (1944), 115 Mont. 469, 146 P.2d 151. However, this performance exception applies only if the plaintiff clearly shows that the contracting parties mutually agreed at the time they entered the contract that the contract was to be performed in a particular county other than that of defendant's residence. The particular county must be clear from the express terms of the contract or by necessary implication from the contract terms. *Armon v. Stewart* (1973), 162 Mont. 262, 264, 511 P.2d 8, 9.

Since there was no specified place of performance in this contract, and since the place of performance was not clear from the express allegations in plaintiffs' complaint, the place for venue, according to *Berlin*, was the place of defendant's residence. However, if that general rule of venue is not sufficient, certainly the uncontroverted testimony in this case was sufficient to establish that the place of performance for the contract between Bitterroot Valley Bank and First Citizen's Bank was a place other than Ravalli County.

The only testimony given regarding the place of First Citizen's Bank's performance was given by the vice president in charge of loans from Bitterroot Valley Bank. He testified as follows:

Q. Okay. Now you allege that there was an agreement with First Citizen's Bank; is that correct?

A. I don't believe that is correct.

Q. Okay. There was no agreement -- you had no agreement with First Citizen's Bank, is that right, in this case?

9

A.  My agreements, I guess, with First Citizen's Bank were -- if you'd like me to tell the whole scenario now, I can.

Q.  I would just like to have you answer the question. Do you contend you had an agreement in this case with First Citizen's Bank?

A.  I guess I would, yes.

Q.  Okay.  And was that agreement that First Citizen's Bank would, which you contend, First Citizen's Bank would release the title to this mobile home?

A.  That is correct.

Q.  And to whom would First Citizen's Bank release the title to the mobile home?

A.  I was told by Robert Beck at First Citizen's State Bank of Butte that normal course of business, that he would send the title to the mobile home dealer.

Q.  Okay.  Who was the mobile home dealer in this case in which the -- Mr. and Mrs. Depee purchased the home from.

A.  Better Homes of Montana.

Q.  Where is that place of business?

A.  Out by the airport near Missoula.

Q.  In Missoula County?

A.  In Missoula County.

The majority points out that there were two separate agreements.  There was a written purchase agreement between the mobile home dealer and the purchasers, Brett Depee and Janet Depee. However, defendant First Citizen's Bank was clearly not a party to that agreement.  The second agreement alleged is the agreement between First Citizen's Bank and Bitterroot Valley Bank.  However, according to the uncontroverted testimony of Bitterroot Valley

10

Bank's own vice president, all of First Citizen's Bank's duties pursuant to that agreement were to be performed in Missoula County. The fact that Better Homes, once it received the title from First Citizen's Bank, might have eventually sent it to Ravalli County pursuant to a separate agreement is irrelevant to the issue of proper venue for enforcement of the contract between Bitterroot Valley Bank and First Citizen's Bank.

Furthermore, § 25-2-121(2)(a), MCA, which pertains to proper venue within which to enforce contracts for the sale of property or goods, is irrelevant to the issue of proper venue for the suit against First Citizen's Bank. First Citizen's Bank was not a party to any contract for the sale and delivery of property or goods.

Because Ravalli County was not the proper venue for suit on plaintiffs' claim for breach of contract, all of plaintiffs' claims should have been transferred to Silver Bow County pursuant to defendant's motion for change of venue. Section 25-2-116, MCA, provides that:

> In an action involving two or more claims for which this part designates more than one as a proper place of trial, a party entitled to a change of place of trial on any claim is entitled to a change of place of trial on the entire action, subject to the power of the court to separate claims or issues for trial under Rule 42(b) of the Montana Rules of Civil Procedure.

The majority has, in effect, held that because one of the plaintiffs had a contract with a mobile home dealer, who is not a party to this lawsuit, wherein the mobile home dealer agreed to deliver a mobile home in Ravalli County, the defendant bank, which was not a party to that contract and had nothing to say concerning

11

its terms, is subject to suit in Ravalli County. This is, indeed, an interesting and novel approach to venue. If the average practitioner was not previously confused by this Court's decisions regarding venue, he or she should be now.

Periodically, the Legislature attempts to codify our decisions regarding venue in order to simplify the rules of venue for practicing attorneys. The next time the Legislature attempts to do so it will be interesting to see how it explains this decision.

For the above reasons, I dissent from the opinion of the majority. I would reverse the District Court and order that venue be transferred to Silver Bow County.

_____
Justice

Justice Karla M. Gray joins in the foregoing dissent.

_____
Justice

12

May 11, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

J. Richard Orizotti
Poore, Roth & Robinson
1341 Harrison Ave.
Butte, MT 59701

Dan G. Cederberg
Attorney at Law
201 W. Main, 310 Central Square
Missoula, MT 59802

Judith A. Loring
Attorney at Law
P.O. Box 4
Stevensville, MT 59870

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy